Sean ZAINC and William
Demers, Plaintiffs,

v.

CITY OF WATERBURY, Sgt. Setzer, Jaimie Hobart, Joseph Costanzo, Patrolman T. Cavenaugh, Patrolman S. Laferrier, Lt. M. Edwards, and James Egan, Defendants.

No. 3:06CV01516(DJS).

United States District Court,
D. Connecticut.

March 23, 2009.

John R. Williams, New Haven, CT, Robert A. Serafinowicz, Bojka Law Offices, Waterbury, CT, for Plaintiffs.

Cheryl E. Johnson, Law Office of Cheryl E. Johnson, Waterbury, CT, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiffs, Sean Zainc ("Zainc") and William Demers ("Demers") (collectively, "the Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983 against the defendants, the City of Waterbury ("the City"), Sgt. Setzer ("Setzer"), Jaimie Hobart ("Hobart"), Joseph Costanzo ("Costanzo"), Patrolman T. Cavenaugh ("Cavanaugh")[1], Patrolman S. Laferrier ("Laferriere")[2], Lt. M. Edwards ("Edwards"), and James Egan ("Egan") (collectively, "the Defendants") alleging that the Defendants violated the Plaintiffs' rights under the United States Constitution. The Plaintiffs also allege that the Defendants violated the Connecticut Constitution and intentionally inflicted emotional distress upon them, and that Costanzo subjected Demers to assault and battery. The Defendants have filed a motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that hereafter follow, the Defendants' motion for partial summary judgment (**dkt. # 50**) is **GRANTED in part and DENIED in part.**

## I. FACTS

At all times relevant to this case, the individual Defendants were members of the City's Police Department. Setzer held the rank of Sergeant; Edwards, who now holds the rank of Captain, held the rank of Lieutenant; Cavanaugh held the rank of patrol officer; Laferriere held the rank of patrol officer; Egan held the rank of Deputy Chief in charge of operations and Commander of the Detective Bureau; Costanzo held the rank of patrol officer; and Hobart held the rank of patrol officer.

In the early morning of October 4, 2005, the Plaintiffs and defendants Hobart and Costanzo were patrons at Boru's Bar and Grill ("Boru's") in Waterbury, Connecticut. There is evidence that both Hobart and Costanzo were intoxicated. Soon before Boru's was to close, Hobart realized that she could not locate her cell phone. Hobart began to ask other patrons at Boru's, including the Plaintiffs, whether they had seen her phone. It appears that she did this a number of times. When nobody admitted to knowing where the phone was, she and Costanzo began accusing other patrons of stealing the phone.

After Boru's closed, this situation continued into the parking lot. There is evidence that, once in the parking lot, Costanzo began to focus his attention upon Demers, who continued to deny stealing the phone. The verbal altercation between Costanzo and Demers soon became physical. Demers claims that Costanzo assaulted him. According to the Plaintiffs, Costanzo threatened to arrest anybody who tried to stop him. In addition, Hobart had moved her car so as to prevent other vehicles, including the Plaintiffs' vehicle, from leaving.

At some point during this incident, Hobart and Costanzo dialed 911 three times. During the first call, Hobart, who apparently did not address the 911 dispatcher, could be heard saying things to the effect of "keep running your mouth," "do you know who you're fuckin' talking to," and "I am a cop you fuckin' asshole." (*See* dkt.

---

1. The complaint spells this defendant's name as "Cavenaugh"; however, it appears that his name is actually spelled "Cavanaugh." Therefore, the Court shall use "Cavanaugh" throughout this opinion.

2. The complaint spells this defendant's name as "Laferrier"; however, it appears that his name is actually spelled "Laferriere." Therefore, the Court shall use "Laferriere" throughout this opinion.

# 70, Ex. II.) During the second call, Costanzo identified himself as a police officer to the 911 dispatcher and asked that a police car be sent to Boru's because his "partner," whom he identified as another police officer, had her phone stolen. (*See id.*) During the third call, Hobart told the 911 dispatcher that there was a fight at Boru's "with two cops and a bunch of kids." (*See id.*)

The first police unit to arrive at the scene consisted of Cavanaugh and Laferriere. Upon arriving at the scene, Cavanaugh and Laferriere noticed several individuals in the parking lot and recognized that two of those individuals, Hobart and Costanzo, were off-duty police officers. The parties admit that Cavanaugh's and Laferriere's duties at the scene were to separate the disputing parties, inquire if anyone needed medical attention, and maintain the peace until a supervisor arrived at the scene. The Plaintiffs maintain, however, that as soon as Cavanaugh and Laferriere arrived on the scene, they immediately shook hands with Costanzo, asked him what had happened, and placed the Plaintiffs into custody. Moreover, the Plaintiffs maintain that none of the Defendants ever offered Demers any medical treatment for the injuries he sustained at the hands of Costanzo.

Within a few minutes, Setzer arrived at the scene to investigate. The Defendants maintain that Setzer was the only officer at the scene investigating the incident. The Plaintiffs allege that Edwards also arrived at the scene to investigate. According to Zainc, he saw a white officer conduct an inquiry at the scene, point at Demers, and order that Demers be arrested. Setzer is black.

The parties agree that, at some point after the arrival of the other police officers at the scene, Hobart called Egan at home, apparently to seek his help or advice. Egan held the highest rank out of all the individual defendants in this case. It is undisputed that it was not normal protocol for Hobart to call Egan, who was a friend of Hobart's father, and that by doing so, Hobart broke the chain of command.

Eventually, Demers was placed under arrest for breaching the peace, and Zainc was placed under arrest for interfering with a police officer. Setzer, the sergeant on the scene, made the decision to arrest them. It does not appear that either Hobart or Costanzo was arrested. According to the Plaintiffs, Costanzo and Hobart were allowed to drive away from the scene even though they were intoxicated. The Plaintiffs were transported to the police headquarters for booking. Egan, who had not been on duty at the time of the incident, arrived at the headquarters around 2:00 a.m. Both Plaintiffs state that they were questioned there. The criminal charges against the Plaintiffs were eventually dropped by the State's Attorney for the Judicial District of Waterbury.

The Internal Affairs Department ("the IAD") of the Waterbury Police Department conducted an investigation of Hobart's and Costanzo's conduct. The IAD then issued a report wherein it found that both Hobart and Costanzo had taken "considerable police action in a member involved dispute." (Dkt.# 63, Ex. 11.) The IAD also found that: both Hobart and Costanzo, after using physical force during the incident at Boru's, failed to file a use of force report; Hobart, when calling 911, used profanity, failed to identify herself, and failed to give concise information about the incident; Costanzo, when calling 911, failed to give concise information about the incident; both Hobart and Costanzo failed to conduct themselves in a manner that reflected favorably on the Waterbury Police Department; and that Hobart had violated the chain of command.

## II. DISCUSSION[3]

The Plaintiffs allege that the Defendants are liable for: unreasonable force; false arrest; false imprisonment; malicious prosecution; denial of medical treatment; and intentional infliction of emotional distress.

The Defendants now move for partial summary judgment, arguing that: (1) the Plaintiffs have failed to state a claim against the City; (2) probable cause existed to arrest the Plaintiffs; (3) the Plaintiffs are precluded from asserting claims of false arrest, malicious prosecution, and false imprisonment; (4) the Plaintiffs have failed to state a claim against Egan, Edwards, and Setzer in their supervisory capacities; (5) there are no material facts to support a claim that Hobart used unreasonable force against Zainc; (6) there are not material facts to support a claim that Egan, Edwards, Setzer, Cavanaugh, or Laferriere used unreasonable force against the Plaintiffs; (7) there are no material facts to support the claims that Egan, Edwards, Setzer, Cavanaugh, Laferriere, Costanzo, or Hobart falsely arrested, falsely imprisoned, or maliciously prosecuted the Plaintiffs; (8) Demers has failed to state a claim against all the Defendants for a denial of medical treatment; (9) there are no material facts to support the claim that the Defendants intentionally inflicted emotional distress upon the Plaintiffs; (10) all the Defendants are entitled to qualified immunity; and (11) Hobart and Costanzo are entitled to qualified immunity regarding the issue of acting under "color of law." The Plaintiffs refute all of the Defendants' arguments, arguing that the Defendants are not entitled to summary judgment on any of the claims in the complaint. The Court shall discuss the parties' arguments seriatim.[4]

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view all inferences and ambiguities in

---

**3.** The parties do not argue that the analyses for the parallel federal and Connecticut constitutional claims in this case are different, nor do they point to any case law demonstrating that, for example, an unreasonable force claim brought under the Connecticut Constitution is different from an unreasonable force claim brought under the U.S. Constitution.

Therefore, the Court shall analyze such claims together. *See Carey v. Maloney*, 480 F.Supp.2d 548, 561 (D.Conn.2007).

**4.** The Court shall, however, address the parties' arguments in the order it finds to be the most logical.

a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

## B. MUNICIPAL LIABILITY

■■■ "[M]unicipalities [are] liable under § 1983 to be sued as 'persons' within the meaning of that statute, when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." *Reynolds v. Giuliani*, 506 F.3d 183, 190 (2d Cir.2007) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy [or custom] of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir.2008) (citing *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018). "The fifth element—the 'official policy' element—can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'" *Id.* (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. 2018). "[A] municipality may not be found liable simply because one of its employees committed a tort .... [and] a municipality cannot be made liable under § 1983 for acts of its employees by application of the doctrine of respondeat superior." *Id.* (internal citation and quotation marks omitted).

■■■ The Plaintiffs argue that the members of the City's police force became intoxicated and accosted civilians in such a persistent and widespread manner that their conduct constitutes a custom about which the City should have had constructive notice. To support this argument, the Plaintiffs cite to a case, *Galazo v. City of Waterbury*, 303 F.Supp.2d 213 (D.Conn. 2004), which had been assigned the undersigned. In *Galazo*, the plaintiff, who worked at a bar in Waterbury, was involved in an altercation with some off-duty Waterbury police officers and arrested. *See id.* at 215. It did not appear that the plaintiff had instigated the altercation. *See id.* The prosecution ultimately entered *nolle prosequi* on the criminal charges against the plaintiff. *See id.*

The Court is not persuaded by the Plaintiffs' use of *Galazo*. To begin with, the facts in *Galazo* do not state that the defendant police officers had been intoxicated,[5] whereas here the Plaintiffs allege that Hobart and Costanzo were intoxicated. Thus, *Galazo* cannot support the argument that the City has a policy of ignoring the wrongful conduct of customarily inebriated police officers. In addition, even if *Galazo*'s facts were completely on point with the facts here, the Court would not find that two instances of disorderly behavior from off-duty Waterbury police officers would constitute a custom so pervasive that the City should be on notice about it. Indeed, in *Galazo*, the Court ruled that all of the claims against the City failed as a matter of law. *See id.* at 216–17. Therefore, the Court finds that the Plaintiffs have provided insufficient evidence to support the allegation that the City had a policy of ignoring the constitutional violations of intoxicated off-duty po-

---

5. Of course, *Galazo* may imply that some of the defendants were intoxicated, as the altercation in that case took place in a bar on St. Patrick's Day. *See Galazo*, 303 F.Supp.2d at 215. *Galazo* does not, however, explicitly state that any of the parties were, in fact, intoxicated, and the Court cannot assume that they were.

lice officers. Consequently, this allegation fails as a matter of law.

The Plaintiffs also argue that the City had a custom of protecting Hobart and holding her to a different set of standards because her father was a friend to the Chief of Police, Neil O'Leary, and Egan. The Court finds this argument to be unpersuasive. Even assuming that the City had such a custom (which, in the Court's view, the Plaintiffs have not established), the Plaintiffs have failed to demonstrate a nexus between this custom and the alleged deprivation of their constitutional rights. The Plaintiffs simply assert that the City's "custom" fostered Hobart's belief that she could do whatever she wanted. This assertion, though, is not supported by the record. The Plaintiffs point to no other instances of misconduct by Hobart, or to other instances where the City should have disciplined Hobart but did not. In fact, in this case, both Hobart and Costanzo were engaged in the altercation, and both received discipline. These facts undercut the argument regarding the City's alleged special treatment of Hobart.

The Court is also unconvinced by the Plaintiffs' failure to supervise and failure to train arguments. As the Second Circuit has noted, "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir.2007). "Such a pattern, if sufficiently persistent or widespread as to acquire the force of law, may constitute a policy or custom within the meaning of *Monell*." *Id.* "It follows therefore that a government supervisor who fails to take obvious steps to prevent manifest misconduct is subject to suit under § 1983 in certain, limited circumstances." *Id.*

To demonstrate a failure to supervise claim, plaintiffs must

> (1) establish state defendants' duty to act by proving they should have known their inadequate supervision was so likely to result in the alleged deprivations so as constitute deliberate indifference ...; (2) identify obvious and severe deficiencies in the state defendants' supervision that reflect a purposeful rather than negligent course of action; and (3) show a causal relationship between the failure to supervise and the alleged deprivations to plaintiffs.

*Id.* at 193. "Plaintiffs must prove in the end that the state defendants' inadequate supervision actually caused or was the moving force behind the alleged violations." *Id.*

In the Court's view, the Plaintiffs have not met their burden here. To begin with, there is no evidence that the City should have known that its allegedly inadequate supervision of Hobart or Costanzo was so likely to result in constitutional deprivations that its conduct could constitute deliberate indifference. There is no evidence that any such indifference was purposeful. More to the point, however, is the fact that Hobart and Costanzo were off-duty at the time of the altercation. The typical failure to supervise claim involves conduct performed while on duty. The Court fails to see how the City could have a duty to supervise the conduct of all off-duty employees. Even if the City wanted to supervise such conduct, it would be near impossible to do so. The failure to supervise claim fails as a matter of law.

This leaves the claim for failure to train. "The failure to train ... city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray v. City of New York*, 490 F.3d 189,

195 (2d Cir.2007). To establish deliberate indifference, a plaintiff must show that: [i] a policymaker knows to a moral certainty that city employees will confront a particular situation; [ii] the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and [3] the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Id.* at 195–96 (internal quotation marks omitted). "[A] policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events." *Id.* at 196 (internal quotation marks omitted). "[W]here ... a city has a training program, a plaintiff must—in addition—identify a specific deficiency in the city's training program and establish that th[e] deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Id.* (internal quotation marks omitted).

■ The Plaintiffs have not met their burden for the failure to train claim. The Plaintiffs present no evidence that the City knew "to a moral certainty" that its (off-duty) police officers would confront the particular situation presented here. There is no evidence that the situation here would have been made less difficult by any training, nor is there evidence that the City's police officers have a history of mishandling such a situation. Moreover, the Plaintiffs do not point to a specific deficiency in the City's training program that caused their injuries. Instead, the Plaintiffs generally malign Hobart's choice of friends, or Hobart's and Costanzo's alleged off-duty recreational activities. This is not evidence of a failure in the City's training of its police officers. Thus, the Court finds that the claims against the City fail as a matter of law. Consequently, with regard to the Plaintiffs' claims against the City, the motion for partial summary judgment is granted.

### C. HOBART'S USE OF FORCE AGAINST ZAINC

The Defendants argue that Hobart is not liable to Zainc for the use of unreasonable force under either the Fourth Amendment or Fourteenth Amendment. The Defendants argue that Zainc's claim under the Fourth Amendment fails because, at the time Hobart made physical contact with Zainc, he was not under arrest or otherwise seized. According to the Defendants, Zainc's unreasonable force claim, which necessarily must fall under the Due Process Clause of the Fourteenth Amendment, fails under the "shocks the conscience" test.

■ The Court is unsure about the Defendants' analysis in this regard. The Fourth Amendment to the United States Constitution states that "[the right of the people to be secure in their persons, against unreasonable searches and seizures, shall not be violated....]" U.S. Const. amend. IV. "The Fourth Amendment's search and seizure provisions are applicable to [state] defendants through the Fourteenth Amendment's Due Process Clause." *Tenenbaum v. Williams,* 193 F.3d 581, 602 n. 14 (2d Cir.1999) (citing *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (emphasis in original). The Defendants, though,

maintain that, because Hobart was placing Zainc under arrest, or otherwise seizing Zainc, at the time of physical contact, the Supreme Court's directive does not apply here.

The Court, however, does not necessarily read *Graham* as narrowly as the Defendants do. A reasonable jury could find that Costanzo had seized Demers in this case, and that Hobart assisted Costanzo in this seizure. As some courts have noted, "[e]ven if the plaintiff may not have been the actual target of the arrest, the rule is not diminished-Fourth Amendment analysis still governs." *Dismukes v. Hackathorn,* 802 F.Supp. 1442, 1449 (N.D.Miss.1992) (citing *Roach v. The City of Fredericktown,* 882 F.2d 294, 297 (8th Cir.1989); *Jones v. Sherrill,* 827 F.2d 1102, 1104 (6th Cir.1987)); *see Martien v. City of Schenectady,* No. 1:04–CV–679 (FJS/RFT), 2006 WL 1555565, at *2 n. 4 (N.D.N.Y. June 2, 2006); *see also Teames v. Henry,* No. Civ. 3:03–CV–1236–H, 2004 WL 357961, *2 (N.D.Tex. Feb. 26, 2004).

The Court is aware that "police action ... that negligently causes injury to bystanders does not equate to an excessive use of force toward those bystanders." *Martien,* 2006 WL 1555565, at *3 (internal quotation marks omitted). Additionally, as the Supreme Court has held, "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement ..., nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement ..., but only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Brower v. County of Inyo,* 489 U.S. 593, 596–97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (emphasis in original). Moreover, a plaintiff cannot state a claim under the Fourth Amendment when he was affected by police action

that was used with the intent to seize another person. *See Medeiros v. O'Connell,* 150 F.3d 164, 167–69 (2d Cir.1998) (holding that the estate of teenager who had ridden in a school van commandeered by an armed robber did not have a viable Fourth Amendment claim against a state trooper who, when shooting at the robber, fired a bullet that ricocheted off the van and hit the teenager). That is, a plaintiff has no Fourth Amendment claim when the police force used to effectuate the seizure of another accidentally or unintentionally touches the plaintiff.

Here, however, the Court is faced with a different situation because Hobart's actions were actually directed toward Zainc. That is, assuming that Hobart had participated in Costanzo's seizure of Demers, she intentionally used force against Zainc, who was analogous to a bystander, during the course of that seizure. Courts have applied a Fourth Amendment analysis in situations where the police, while seizing another individual, intentionally used force against a bystander. *See Paul v. City of Rochester,* 452 F.Supp.2d 223, 226–27 (W.D.N.Y.2006); *Martien,* 2006 WL 1555565, at *2.

Under *Graham,* "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. Furthermore, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio,* 392 U.S. 1, 20–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "The calculus of reasonableness must embody allowance for the fact that police officers are

often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865.

In the Court's view, determining reasonableness of Hobart's actions is best left for the jury. The Court realizes that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, ... violates the Fourth Amendment." *Id.* at 396, 109 S.Ct. 1865 (internal citation omitted). Nevertheless, the facts of this case differ from those of a typical excessive force case, and there are valid questions as to whether Hobart was entitled to exercise any force against Demers at all.[6] Therefore, with regard to Hobart's actions toward Zainc, the Defendants' motion for partial summary judgment is denied.

### D. UNREASONABLE FORCE/CAUSE TO ARREST

The Defendants argue that there are no material facts to support a claim that Egan, Edwards, Setzer, Cavanaugh, or Laferriere used unreasonable force against the Plaintiffs. According to the Defendants, Egan, Edwards, Setzer, Cavanaugh, and Laferriere arrived at the scene after the physical altercation had ended.

■■■ "It is well settled in [the Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (internal quotation marks omitted); *see Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir.2001) ("Proof of an individual defendant's personal involvement in the alleged wrong is,

of course, a prerequisite to his liability on a claim for damages under § 1983."). "A police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (citing *Ricciuti v. N.Y. City Transit Auth.,* 124 F.3d 123, 129 (2d Cir.1997); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994)). "A plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *Id.* Nevertheless, "A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights...." *Ricciuti,* 124 F.3d at 129.

■■■ In the Court's view, defendants Egan, Edwards, Setzer, Cavanaugh, and Laferriere cannot be held liable for unreasonable force with regard to the physical altercation alleged here. The record is clear that defendants Egan, Edwards, Setzer, Cavanaugh, and Laferriere did not participate in the altercation, nor were they present during the altercation. That is, these defendants were not in a position to stop the altercation.

■■■ The Plaintiffs, citing to Ninth Circuit caselaw, argue that where there is no need for force, any force used is unreasonable. Thus, the Plaintiffs claim that their arrests constituted excessive force because the arrests themselves were unlawful and unnecessary. The Court points out, though, that under Second Circuit caselaw, even if an arrest were unlawful, there is no

---

6. The Court points out to the Defendants that it also would allow the question of whether Hobart's conduct "shocks the conscience" under the Fourteenth Amendment to be an-

swered by a jury. Again, the facts in this case, although not unprecedented, are not typical.

*per se* rule that any force employed for that arrest is also unlawful; the "reasonableness standard" applies to all excessive force claims. *See Jones v. Parmley,* 465 F.3d 46, 62 (2d Cir.2006). There is no allegation that the force used during the Plaintiffs' arrests was excessive; the allegation is that the act of simply placing the Plaintiffs under arrest itself constituted excessive force. In light of this, the Court believes that if there was probable cause to arrest the Plaintiffs, the arrests would have met the reasonableness standard, and the Plaintiffs' unreasonable force allegations against Egan, Edwards, Setzer, Cavanaugh, and Laferriere would fail.

█ The Court notes that there is no indication that Egan was present during the Plaintiffs' arrest. That is, he was not personally involved in the alleged constitutional violations. Therefore, the Plaintiffs cannot sustain an unreasonable force claim against him. With regard to Edwards, Setzer, Cavanaugh, and Laferriere, who allegedly were all present at the scene of the Plaintiffs' arrests, the Court turns to whether there was probable cause for the arrests.

█ "[F]ederal and Connecticut law are identical in holding that probable cause to arrest exists when police officers have 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Walczyk v. Rio,* 496 F.3d 139, 156 (2d Cir.2007) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996); citing *State v. James,* 261 Conn. 395, 415, 802 A.2d 820 (2002)). "[P]robable cause is a fluid concept ... not readily, or even usefully, reduced to a neat set of legal rules.... While probable cause requires more than a mere suspicion[ ] of wrongdoing, its focus is on 'probabilities,' not 'hard certainties[ ]'...." *Id.* (internal citations and quotation marks omitted). "In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (internal quotation marks omitted). In sum, probable cause "requires only such facts as make wrongdoing or the discovery of evidence thereof probable." *Id.* at 157.

█ Based on the above law, the Court concludes that there was probable cause to arrest the Plaintiffs. "Where parties dispute *what facts were known* to police officers at the time an individual was arrested, resolution is for the jury; where ... the parties do not dispute what facts were known to Defendants but dispute whether those facts support probable cause, the disposition is a matter of law." *Moreno v. City of New Haven Dep't of Police Serv.,* Civil No. 3:07cv851 (JBA), 604 F.Supp.2d 364, 372, 2009 WL 606110, at *6 (D.Conn. Mar. 9, 2009) (emphasis in original) (citing *Walczyk,* 496 F.3d at 157 ("It has long been recognized that, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court.")). Here, there is no dispute that the Plaintiffs had been involved in an altercation with Costanzo and Hobart, nor is there any dispute that the arresting officers knew about this involvement.

The Plaintiffs may dispute that the facts known to the arresting officers at the time of arrest were sufficient to support probable cause, especially considering that, according to the Plaintiffs, the arrests were based solely on Hobart's and Costanzo's representations. This, however, is a question of law with which the Court disagrees. The Plaintiffs' involvement in the altercation possibly constituted a violation of Connecticut law (e.g., assault, battery, or

breach of peace) for which arrests were warranted. In the Court's view, a reasonable officer on the scene could have concluded that probable cause to arrest existed.

 Moreover, the fact that the Plaintiffs ultimately may have been justified in their actions, or that they were vindicated in judicial proceedings, does not bear on whether there was probable cause to arrest. *See Krause v. Bennett,* 887 F.2d 362, 371 (2d Cir.1989) ("[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful."); *United States v. Fisher,* 702 F.2d 372, 375 (2d Cir.1983) ("The quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction...."); *Spencer v. Connecticut,* 560 F.Supp.2d 153, 162 (D.Conn.2008). Furthermore, the fact that Edwards, Setzer, Cavanaugh, and Laferriere did not arrest either Hobart or Costanzo even when there may have been probable cause to do so, although seemingly unfair, does not mean that they lacked probable cause to arrest the Plaintiffs. Whether there was probable cause to arrest Costanzo or Hobart bears little on whether there was probable cause to arrest the Plaintiffs. As such, the Court finds that there was probable cause to arrest the Plaintiffs. Thus, their arrests were reasonable, and could not constitute unreasonable force under the Fourth Amendment. Consequently, with regard to the unreasonable force allegations against Egan, Edwards, Setzer, Cavanaugh, and Laferriere, the Defendants' motion for partial summary judgment is granted.

## E. FALSE ARREST/FALSE IMPRISONMENT/MALICIOUS PROSECUTION [7]

### 1. False Arrest/False Imprisonment

 In Connecticut, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Green v. Donroe,* 186 Conn. 265, 267, 440 A.2d 973 (1982). "[The applicable law for these two causes of action is identical.]" *Outlaw v. City of Meriden,* 43 Conn.App. 387, 392, 682 A.2d 1112 (1996); *see Russo v. City of Bridgeport,* 479 F.3d 196, 204 (2d Cir.2007). "To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly." *Berry v. Loiseau,* 223 Conn. 786, 820, 614 A.2d 414 (1992) (internal quotation marks omitted). The restraint must be accomplished "through the exercise of force." *Id.* at 821, 614 A.2d 414. "A person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." *Green,* 186 Conn. at 268, 440 A.2d 973.

 It appears that the false arrest/false imprisonment claims are based on the Plaintiffs' arrests and transportation to police headquarters, where the Plaintiffs were held for a number of hours. The Defendants argue that, under Connecticut law, false arrest/false imprisonment claims require the Plaintiffs to demonstrate a "favorable termination" of the

---

**7.** It is unclear whether these claims are brought solely under Connecticut law, solely under § 1983, or under both. Any such distinction is not material to this analysis, though, as "[c]laims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003); *see Pizarro v. Kasperzyk,* 596 F.Supp.2d 314, 316–19 (D.Conn. 2009).

criminal charges against them. Connecticut law is unsettled as to whether a plaintiff, in order to prove a claim of false arrest, must show that the prosecution terminated in his favor. *See Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir.1996). Although the Second Circuit in *Roesch v. Otarola*, 980 F.2d 850, 853–54 (2d Cir.1992) found that a favorable termination of the underlying proceedings was an element of a false arrest claim in Connecticut, this specific holding of the *Roesch* decision subsequently has been called into question, *see, e.g., Colon v. Ludemann*, 283 F.Supp.2d 747, 753–54 (D.Conn.2003), and has not been expressly adopted by the Connecticut Supreme Court.

Assuming that the Plaintiffs must show favorable terminations of the criminal charges against them, the Defendants argue that the entries of *nolle prosequi* do not qualify as such. The undersigned has previously addressed this issue in *Galazo*, wherein the Court found that a *nolle prosequi* is not necessarily insufficient to constitute a favorable termination of criminal charges. *See Galazo*, 303 F.Supp.2d at 218–19. This was not a singular finding. *See Miller v. Moynihan*, 453 F.Supp.2d 453, 459 n. 3 (D.Conn.2006) (collecting cases).

 That being said, the false arrest/false imprisonment claims fail for another reason. "It is well-established that probable cause is a complete defense to claims of false imprisonment and false arrest." *Johnson v. Ford*, 496 F.Supp.2d 209, 213 (D.Conn.2007); *see Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir.2004). "The court may determine the existence of probable cause as a matter of law 'if there is no dispute as to the pertinent events and the knowledge of the officers.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Obviously, the Plaintiffs maintain that they did nothing wrong and that all of their actions were justified. Indeed, the Court admits that, looking at the record in hindsight, they may be correct. The Plaintiffs' ultimate innocence, however, is not relevant to the question of whether there was probable cause to arrest them. The relevant facts are not in dispute, i.e., that the Plaintiffs were involved in an altercation with Hobart and Costanzo. As the Court discussed above, this gave the police probable cause to arrest the Plaintiffs (and Costanzo and Hobart, who were not arrested). Thus, the false arrest/false imprisonment claims fail. Consequently, with regard to the false arrest/false imprisonment claims, the Defendants' motion for partial summary judgment is granted.

### 2. Malicious Prosecution

 "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment ... and establish the elements of a malicious prosecution claim under state law...." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir.2002) (internal citations omitted). Under Connecticut law,

> [a]n action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.

*Bhatia v. Debek*, 287 Conn. 397, 404, 948 A.2d 1009 (2008) (internal quotation marks omitted).

 The Defendants' first argument here is that there was no favorable termination of the criminal charges against the

Plaintiffs because of the *nolle prosequi* entries. As noted above, the undersigned has previously addressed this issue in *Galazo*, wherein the Court found that a *nolle prosequi* is not necessarily insufficient to constitute a favorable termination of criminal charges. *See Galazo*, 303 F.Supp.2d at 218–19; *see also Colon*, 283 F.Supp.2d at 754–55; *Sabir v. Jowett*, 214 F.Supp.2d 226, 241–42 (D.Conn.2002). As Judge Atherton has noted, "the majority of courts considering the issue have held that an unqualified *nolle prosequi* represents a disposition favorable to a criminal defendant." *Miller*, 453 F.Supp.2d at 459 n. 3 (citing cases). That is, "a nolle of . . . criminal charge[s] may still permit the plaintiff to satisfy th[e] [favorable termination] element if the circumstances of the nolle satisfy the . . . test of 'an abandonment of the prosecution without request from or by an arrangement with [the defendant].'" *Holman v. Cascio*, 390 F.Supp.2d 120, 123 (D.Conn.2005) (quoting *See v. Gosselin*, 133 Conn. 158, 160, 48 A.2d 560 (1946)). On the other hand, "a nolle will preclude a subsequent case for malicious prosecution when it was made as part of a plea bargain or under other circumstances that indicate that the defendant received the nolle in exchange for providing something of benefit to the state or victim." *Id.* at 123–24;

■ Here, there is no indication that the *nolle prosequi* entries were made as a part of a plea bargain or other arrangement whereby the Plaintiffs provided the state with any benefit. Therefore, the Court cannot find, as a matter of law, that the entries of *nolle prosequi* in this case are insufficient to satisfy the "favorable termination" element of a malicious prosecution claim.

■ The Defendants also argue that Egan had no direct involvement here. The Court noted above that a defendant's personal involvement in an alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *See Farrell*, 449 F.3d at 484. As the Second Circuit has explained,

> [the personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.]

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

■ The Court declines to grant summary judgment based on the Defendants' argument here. There are questions of fact involving Egan's participation, specifically with regard to Egan's actions when he went to the police station on the night in question. It is possible that he failed to remedy the wrongs alleged by the Plaintiffs, or that he exhibited deliberate indifference, especially considering that criminal charges were ultimately brought against the Plaintiffs based on the say-so of Hobart and Costanzo.[8] Consequently,

---

8. The Defendants also argue that the false arrest/false imprisonment and malicious prosecution claims against Setzer should be dismissed because there was probable cause to arrest. The Court has already addressed this issue as it relates to false arrest/false imprisonment, and the Court agreed with the Defendants. With regard to malicious prosecution,

with regard to any malicious prosecution allegations against Egan, the Defendants' motion for partial summary judgment is denied.

■ The Defendants also argue that Cavanaugh and Laferriere cannot be found liable for malicious prosecution. The Court agrees. The record shows that Cavanaugh and Laferriere merely transported Demers to the police station for booking and had no further contact with him. Their actions are insufficient to support a malicious prosecution claim. Consequently, with regard to any malicious prosecution allegations against Cavanaugh and Laferriere, the Defendants' motion for partial summary judgment is granted.

■ The Defendants further argue that Hobart and Costanzo are entitled to summary judgment on the malicious prosecution claim. This request is denied. There is evidence in the record that these defendants lied to the 911 dispatchers and members of their own police department about what happened on the night in question. The criminal charges lodged against the Plaintiffs were based directly on Hobart's and Costanzo's representations. The Court shall not grant summary judgment on this basis. Consequently, with regard to any malicious prosecution allegations against Hobart and Costanzo, the Defendants' motion for partial summary judgment is denied.

■ Additionally, the Plaintiffs argue that Edwards is not liable for malicious prosecution. The Court agrees that there are insufficient facts to find that Edwards had any direct involvement here. Unlike Egan, who was Edwards' superior, Edwards appears to have had no direct involvement in or knowledge of the criminal charges brought against the Plaintiffs. It appears that, upon leaving the scene of the altercation, Edwards had no further contact with the Plaintiffs, and there is no evidence he was involved in any of the relevant conduct that took place at police headquarters. Therefore, with regard to the malicious prosecution allegations against Edwards, the Defendants' motion for partial summary judgment is granted.

## F. DENIAL OF MEDICAL TREATMENT

■ The Plaintiffs allege that Egan, Edwards, Setzer, Cavanaugh, Laferriere, Costanzo, and Hobart are liable for denying Demers medical treatment. The Defendants argue that this allegation fails as a matter of law. As the Defendants point out, this allegation falls under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, because Demers had not been convicted of a crime at the time at the time he sustained his injuries.[9] *See Weyant*, 101 F.3d at 856.

■ "[The official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need.]" *Id.* "Deliberate indifference,

---

however, the circumstance giving rise to probable cause would be different than those giving rise to false arrest/false imprisonment. The Defendants, though, only provide arguments regarding probable cause to arrest. Therefore, the Court declines to grant summary judgment on the malicious prosecution allegations against Setzer based on the probable cause argument. In addition, the Court believes the Defendants' argument regarding

any allegations against Setzer in his supervisory capacity are moot because Setzer was directly involved in the claims on which the Court has not already granted summary judgment.

9. In fact, Demers was never convicted of a crime based on the background facts of this case.

in this context, may be shown by evidence that the official acted with reckless disregard for the substantial risk posed by the detainee's serious medical condition." *Id.* "Thus, in order to establish deliberate indifference, a plaintiff must show something more than mere negligence; but proof of intent is not required, for the deliberate-indifference standard is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* (internal quotation marks omitted). A plaintiff must show deliberate indifference to his medical needs "for each defendant." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir.2003).

 A plaintiff also must "show that his medical condition [was] objectively a serious one." *Id.* "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Id.* Nonetheless, courts should consider the following factors: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (internal quotation marks omitted).

 The Plaintiffs have not met their burden in showing that Demers suffered from an objectively serious medical condition. Demers testified that, as a result of Costanzo's conduct, he had cuts on his hands and head and bruising on his left biceps. He also testified that Costanzo hit him on his right shoulder, but this blow did not leave a mark. Demers further testi-

fied that, after being released from custody, he visited a doctor who apparently found that Demers did not need stitches for his injuries. Indeed, the Plaintiffs present no evidence that any of the Demers injuries required any specific medical treatment. There is no evidence that Demers' injuries significantly affected his daily activities or that he suffered chronic and substantial pain. While the Court does not doubt that Demers suffered some injury, and the Court must credit his testimony that he had blood on him after the altercation, the Court finds that his injuries are insufficient to support his claim here.[10] Consequently, with regard to the denial of medical treatment allegations, the Defendants' motion for partial summary judgment is granted.

## G. QUALIFIED IMMUNITY [11]

 "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Supreme Court established the analysis for determining whether an officer is entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to

---

**10.** The Court also does not see evidence regarding the "each defendant" requirement. That is, for all the Defendants to be liable on this claim, the Plaintiffs must show that each defendant denied him medical treatment. The Plaintiffs' evidence fails in this regard.

**11.** In light of the Court's discussion above, the remaining claims for a qualified immunity analysis are the unreasonable force claims against Hobart and Costanzo and the malicious prosecution claims against Hobart, Costanzo, Setzer, and Egan.

the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. "[The next, sequential step is to ask whether the right was clearly established.]" *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. As the Second Circuit has held, "[w]hen a motion for summary judgment is made in the context of a qualified immunity defense, the question of whether the factual disputes are material is even more critical." *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992).

▆▆▆▆ The Defendants argue that Hobart and Costanzo are entitled to qualified immunity because it was not objectively reasonable for them to have been on notice that they were acting under the color of law because they were off-duty and not undertaking any law enforcement activities. The Court disagrees. "[I]t is by now axiomatic that 'under "color" of law means under "pretense" of law'...." *Pitchell v. Callan,* 13 F.3d 545, 548 (2d Cir. 1994) (quoting *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)). For this analysis, "[m]ore is required than a simple determination as to whether an officer was on or off duty when the challenged incident occurred." *Id.* "For example, liability may be found where a police officer, albeit off-duty, nonetheless invokes the real or apparent power of the police department." *Id.*

▆▆▆▆ There is evidence in this case that Hobart and Costanzo invoked the power of the police department during the incident in question. For example, there is evi-

dence that they warned others present during the incident that they were police officers, and that they were conducing a search for Hobart's missing cell phone pursuant to their police duties. Reasonable officers, even if off-duty, should know that such actions would make them liable for acting under the color of law. The fact that they had been drinking is no excuse. The Court shall not grant Hobart and Costanzo qualified immunity on this basis.[12]

▆▆▆▆ With regard to the malicious prosecution allegations, the Court also declines to grant qualified immunity. With regard to Hobart and Costanzo, there is evidence that they gave false statements, which in turn led to the criminal charges against the Plaintiffs. Any reasonable person, let alone a reasonable police officer, should know that such conduct is unlawful. As for Setzer's and Egan's conduct, the Court believes there are questions of fact as to what they knew (or should have known) with regard to existence of probable cause that would allow criminal charges to proceed against the Plaintiffs. This question of material fact precludes the Court from granting qualified immunity to Setzer and Egan. *See Cartier,* 955 F.2d at 845. Therefore, with regard to the remaining claims to which the qualified immunity analysis applies, the Defendants' motion for partial summary judgment is denied.

## H. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

▆▆▆▆ Finally, there are the intentional infliction of emotional distress allegations. The Connecticut Supreme Court has stated that, in order to recover damages on this theory,

---

**12.** With regard to Hobart's and Costanzo's actions inside Boru's and in the Boru's parking lot, the Court feels there is little need for an extensive qualified immunity discussion.

A reasonable jury could easily find that their actions on that night were not objectively reasonable.

[i]t must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe.

*Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986), *superseded by statute on other grounds as recognized in Chadha v. Charlotte Hungerford Hosp.*, 272 Conn. 776, 865 A.2d 1163 (2005). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210, 757 A.2d 1059 (2000). " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* at 210–11, 757 A.2d 1059 (citing 1 Restatement (Second) of Torts § 46, comment (d) (1965)).

 The Court notes that the intentional infliction of emotional distress allegations are based on the same facts that gave rise to all the other claims in this case. In the Court's view, then, any above-analyzed claims for which the Court found a defendant not to be liable cannot support any intentional infliction of emotional distress claims. Up to this point, the Court has granted summary judgment on all of the claims against Edwards, Ca-

vanaugh, and Laferriere. The Court fails to see any additional factual allegations to support emotional distress claims against these three defendants. Therefore, with regard to all emotional distress claims against Edwards, Cavanaugh, and Laferriere, the motion for partial summary judgment is granted.

In addition, with regard to the remaining defendants, the Court has found that the unreasonable force allegations against Egan and Setzer, the denial of medical treatment allegations against Egan, Setzer, Hobart, and Costanzo, and the false arrest/false imprisonment allegations failed as a matter of law.[13] Thus, with regard to the emotional distress claims insofar as they are based on any unreasonable force allegations against Egan and Setzer, the Defendants' motion for partial summary judgment is granted. With regard to the emotional distress claims insofar as they are based on a denial by Egan, Setzer, Hobart, or Costanzo to provide Demers with medical treatment, the Defendants' motion for partial summary judgment is granted. With regard to the emotional distress claims insofar as they are based on any false arrest/false imprisonment allegations against Egan, Setzer, Hobart, or Costanzo, the Defendants' motion for partial summary judgment is granted.

 This leaves, then, the factual allegations against Costanzo and Hobart of unreasonable force, and the factual allegations of malicious prosecution against Egan, Setzer, Costanzo, and Hobart. The Court declines to find, as a matter of law, that the factual allegations supporting

---

**13.** The Court reiterates that the unreasonable force claims against these defendants were based solely on the fact that the Plaintiffs were placed under arrest, i.e., the Plaintiffs claim that the arrests themselves constituted unreasonable force. There is no allegation, however, that any defendant, during the course of the arrest, used more force than was necessary to place the Plaintiffs under arrest. Because the Court found there was probable cause to arrest, the unreasonable force claims against these defendants necessarily failed. This finding of probable cause was also fatal to the false arrest/false imprisonment claims.

these claims are insufficient to support intentional infliction of emotional distress claim. The Court believes it is best left to a jury to pass judgment on the conduct at issue for these claims. Consequently, with regard to the emotional distress claims insofar as they are based on any unreasonable force allegations against Hobart or Costanzo, or on any malicious prosecution claims against Egan, Setzer, Hobart, or Costanzo, the Defendants' motion for partial summary judgment is denied.

## III. CONCLUSION

For the foregoing reasons, the Defendants' motion for partial summary judgment (dkt. # 50) is **GRANTED in part and DENIED in part.**

The Court **GRANTS** summary judgment in favor of the City of Waterbury, Patrolman T. Cavenaugh, Patrolman S. Laferrier, and Lt. M. Edwards on all claims against them in the complaint. **All claims against the City of Waterbury, Patrolman T. Cavenaugh, Patrolman S. Laferrier, and Lt. M. Edwards are hereby DISMISSED.**

With regard to the remaining defendants, the Court **GRANTS** summary judgment in favor of James Egan, Sgt. Setzer, Jaimie Hobart, and Joseph Costanzo on: (1) the false arrest/false imprisonment claims; (2) the denial of medical treatment claims; and (3) any intentional infliction of emotional distress claims based on the false arrest/false imprisonment or denial of medical treatment allegations.

The Court further **GRANTS** summary judgment in favor of James Egan and Sgt. Setzer on: (1) the unreasonable force claims; and (2) any intentional infliction of emotional distress claims based on the unreasonable force allegations.

The Court **DENIES** summary judgment, and the requests for qualified immunity, on all remaining claims.

*This leaves the following claims for trial: (1) the unreasonable force claims against Jaimie Hobart and Joseph Costanzo; (2) the malicious prosecution claims against James Egan, Sgt. Setzer, Jaimie Hobart, and Joseph Costanzo; and (3) the assault and battery claim against Joseph Costanzo.*

*The plaintiffs and the remaining defendants are instructed to notify the Court forthwith whether they consent to have this case referred to a United States Magistrate Judge for the purpose of conducting a settlement conference.*