21-2468-cv
*Henry v. Oluwole*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2022
No. 21-2468

**LAURA HENRY,**
*Plaintiff-Appellee,*

v.

**OLAKUNLE OLUWOLE, M.D.,**
*Defendant-Appellant.*[*]

---

On Appeal from the United States District Court
for the District of Connecticut

---

SUBMITTED: JANUARY 6, 2023
DECIDED: JULY 15, 2024

---

Before:     KEARSE, RAGGI, and MENASHI, *Circuit Judges.*[†]

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

[†] Judge Rosemary S. Pooler, originally a member of the panel, died on August 10, 2023. Judge Reena Raggi was selected to complete the panel. *See* 2d Cir. IOP E(b).

Defendant-Appellant Olakunle Oluwole appeals from the entry of a default judgment in the U.S. District Court for the District of Connecticut (Underhill, J.) awarding $100,000 in noneconomic damages in favor of Plaintiff-Appellee Laura Henry. Henry filed suit against Oluwole and their former employer, Bristol Hospital, alleging that Oluwole had sexually assaulted her. Shortly after Henry filed her complaint, Oluwole was seriously injured in a motorcycle accident, and he maintains that the circumstances of his recovery prevented him from receiving timely notice of the action. Oluwole did not initially appear, and the district court entered a default judgment against him. Five years after Henry filed suit, Oluwole entered an appearance. He moved to set aside the default judgment, but the district court denied his motion. The case against Bristol then proceeded to a jury trial. The jury found that Henry had failed to prove that Oluwole sexually assaulted, assaulted, or battered her. Following the jury verdict, the district court vacated the default judgment against Oluwole as to Henry's assault and battery claims—because those claims were inconsistent with the jury verdict—but left in place the default judgment as to several other claims.

On appeal, Oluwole argues that the district court erred when it denied his motions to set aside the default judgment. We agree. The district court should have set aside the default judgment pursuant to the factors set forth in *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993). And following the jury verdict, the district court should have vacated the entire default judgment as inconsistent with the verdict pursuant to the principle set forth in *Frow v. De La Vega*, 82 U.S. 552 (1872). Accordingly, we **REVERSE** the judgment of the district court and **REMAND** with instructions to enter judgment for Oluwole.

Judge Kearse dissents in a separate opinion.

John F. Costa, Ryan Ryan Deluca LLP, Bridgeport, CT, *for Defendant-Appellant*.

No appearance *for Plaintiff-Appellee*.

MENASHI, *Circuit Judge*:

Defendant-Appellant Olakunle Oluwole appeals from a final judgment entered on September 29, 2021, in the U.S. District Court for the District of Connecticut (Underhill, J.) awarding $100,000 in noneconomic damages to Plaintiff-Appellee Laura Henry. In 2013, Henry filed suit against Oluwole and their former employer, Bristol Hospital ("Bristol"), alleging that Oluwole had sexually assaulted her. Henry asserted claims against Oluwole for assault, battery, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. Shortly after Henry filed her complaint, Oluwole was seriously injured in a motorcycle accident, and he maintains that the length and circumstances of his recovery from the accident prevented him from receiving timely notice of the action.

Oluwole did not initially appear, and the district court entered a default judgment against him as to liability but not as to damages. Five years after Henry filed suit—and after Bristol had proceeded to discovery and filed a motion for summary judgment—Oluwole entered an appearance. He moved to set aside the default judgment, but the district court denied his motion. The case against Bristol then proceeded to trial. The jury returned a verdict in favor of Bristol, finding that Henry had failed to prove that Oluwole sexually assaulted, assaulted, or battered her. Following the jury verdict, the

district court vacated the default judgment against Oluwole as to assault and battery—holding that those claims were inconsistent with the jury verdict—but it left in place the default judgment as to Henry's other claims. The district court then held hearings on damages. It declined to award economic damages and punitive damages to Henry, but it entered a final judgment ordering Oluwole to pay Henry $100,000 in noneconomic damages.

We agree with Oluwole that the district court erred when it denied his motions to set aside the default judgment. Prior to the jury verdict, the district court should have set aside the default judgment pursuant to the factors set forth in *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993). And following the jury verdict, the district court should have vacated the entire default judgment as inconsistent with the jury verdict pursuant to the principle set forth in *Frow v. De La Vega*, 82 U.S. 552 (1872). We reverse the judgment of the district court and remand with instructions to enter judgment for Oluwole.

## BACKGROUND

In 2011, both Henry and Oluwole were employees of Bristol Hospital in Connecticut, where Oluwole was a surgeon. On June 11, 2011, Henry and Oluwole had sexual relations at his office at Bristol. According to Henry's complaint, the encounter was not consensual: Oluwole "grabbed her arm, pulled her towards his body, and attempted to kiss her." App'x 14 (¶ 68).

Two years later, Henry filed this action in federal court against Oluwole and Bristol. Henry's complaint asserts eleven claims against Oluwole: six claims of battery and one claim each of assault, false imprisonment, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and negligence.

4

Oluwole did not appear in the action for several years, which he later attributed to a motorcycle accident that occurred on October 1, 2013, which caused a severe traumatic brain injury with multiple hemorrhagic contusions and fractures. Oluwole reported that he remained in a coma for three weeks and underwent several procedures, including a craniotomy, after the accident. Oluwole said that after transferring between care facilities, he was ultimately discharged from a rehabilitation center in January 2014 and moved in with his parents in New Jersey, with whom he resided until late 2018 when he appeared in this action.

The record indicates that Oluwole was not properly served with process until 2014.[1] On April 11, 2014, an affidavit of service was filed with the district court. It stated that in March 2014 a summons was affixed to Oluwole's last known home address in Kingston, New York, and another summons was mailed to that address.

On February 4, 2015, Henry moved for entry of default against Oluwole. The clerk of court noted the default on the docket on February 12, 2015. In March, Henry moved for a "default judgment," which the district court entered—except as to damages—on September 22, 2015. Because the district court entered a default judgment only with respect to liability and not to damages, this was

---

[1] On June 12, 2013, an electronic summons was issued against Bristol and Oluwole. However, the record does not contain proof of service or indicate whether service was executed. On September 10, 2013, a second electronic summons was issued. This summons was apparently addressed to Albany Medical Center, the hospital that employed Oluwole after he left Bristol. In June 2014, Albany Medical Center returned the summons as unexecuted, explaining that Oluwole was no longer employed at that address.

not a *final* default judgment. [2] Meanwhile, Bristol and Henry continued to litigate in the ordinary course.

Nearly three years later, in August 2018, Oluwole's counsel entered a notice of appearance and, shortly thereafter, moved to set aside the default judgment. Henry opposed the motion and provided some evidence that Oluwole had been aware of her lawsuit since at least November 2015, when he sent Henry a Facebook message that he "was in a very serious accident" and that "[he] couldn't face [Henry] in court because [he] was felt to have amnesia." The district court denied the motion on May 6, 2019, finding that Oluwole's default had been willful and that granting his motion would prejudice Henry. At the same time, the district court acknowledged that Oluwole was likely to mount a meritorious defense because "Oluwole asserts that the disputed sexual encounter with Henry was consensual" and he had identified evidence to support that claim. S. App'x 5-6; *see Enron Oil*, 10 F.3d at 98 ("The test of such a defense is … whether the evidence submitted, if proven at trial, would constitute a complete defense."). Oluwole moved for reconsideration, which the district court denied on May 14, 2019.

After Oluwole appeared, he was deposed by Bristol and Henry in advance of trial. The trial commenced on October 21, 2019. Over five days, the jury heard from fourteen witnesses, including both

---

[2] *See Henry v. Oluwole*, No. 13-CV-826, 2021 WL 4441934, at *4 n.5 (D. Conn. Sept. 28, 2021) ("Although Judge Covello granted Henry's motion, that order was not a final entry of judgment because the damages inquest was postponed pending the resolution of Henry's claims against Bristol Hospital."). Indeed, we dismissed an appeal from the order entering the default judgment because there was no appellate jurisdiction "[i]n the absence of a final judgment." *Henry v. Oluwole*, 799 F. App'x 87, 88 (2d Cir. 2020).

Henry and Oluwole. Oluwole testified that he and Henry had consensual sex on the date in question. The jury found that Henry had not "proven by a preponderance of the evidence that Dr. Oluwole engaged in tortious conduct towards her by sexually assaulting her" and had not "proven by a preponderance of the evidence that Dr. Oluwole engaged in tortious conduct towards her by assaulting or battering her." App'x 304. These findings absolved Bristol of any liability because Henry's claims against the hospital were derivative of her claims against Oluwole.

Oluwole then filed a second motion to set aside the default judgment against him in light of the jury verdict in favor of Bristol. The district court denied that motion, reasoning that the principle underpinning *Frow* did not support vacating the default judgment.

The district court then proceeded to conduct damages hearings against Oluwole. Significantly, the district court partly reversed itself on the *Frow* question. The district court explained that if Bristol was not liable to Henry because the jury found that there was no sexual assault, assault, or battery, then Oluwole could not be liable to Henry for assault and battery, which were premised on the occurrence of a sexual assault. Allowing the assault and battery claims to stand would result in the entry of "logically inconsistent judgments" in contravention of *Frow*. *Henry v. Bristol Hosp., Inc.*, No. 13-CV-00826, 2020 WL 7773418, at *4 (D. Conn. Dec. 30, 2020). But the district court left in place the default judgment against Oluwole with respect to false imprisonment, IIED, NIED, and negligence on the ground that "entry of liability on those counts is not inconsistent with the jury verdict." *Id*. The district court explained that although the IIED and NIED claims "rest in part upon the allegations of sexual assault," those claims also relied on allegations of false imprisonment. *Id*. at *4 n.4. After another hearing on damages, the district court entered a

final judgment ordering Oluwole to pay Henry $100,000 in damages for emotional distress.

## STANDARD OF REVIEW

We review the denial of a motion to set aside entry of a default or a default judgment for abuse of discretion. *See Swarna v. Al-Awadi*, 622 F.3d 123, 133 (2d Cir. 2010); *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001). We review the findings of a district court in connection with a damages award for clear error, *Brown v. C. Volante Corp.*, 194 F.3d 351, 356 (2d Cir. 1999), and questions of law *de novo*, *Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1029 (2d Cir. 1995); *see also Rana v. Islam*, 887 F.3d 118, 121-22 (2d Cir. 2018).

## DISCUSSION

Oluwole argues that the district court erred both times it denied his motions to set aside the default judgment. We agree. The district court erred when it denied Oluwole's initial motion to set aside the default judgment pursuant to the *Enron Oil* factors. The district court erred again when, following the jury verdict in favor of Bristol, it vacated the default judgment as to Oluwole with respect to the assault and battery claims but not the false imprisonment, IIED, NIED, and negligence claims.

## I

The district court abused its discretion when it first denied Oluwole's motion to set aside the default judgment. Although our standard of review is deferential, the district court's discretion when considering a motion to set aside a default or a default judgment is "circumscribed." *Enron Oil*, 10 F.3d at 95. "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt

8

should be resolved in favor of the defaulting party." *Id.* at 96; *see also Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Powerserve*, 239 F.3d at 514. Because of "the policy of favoring judgments on the merits, a glaring abuse of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default." *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 324 (6th Cir. 2010) (internal quotation marks omitted); *see also Davis*, 713 F.2d at 913; *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 373-74 (D.C. Cir. 1980).

The district court's discretion was especially narrow here because the default judgment entered on September 22, 2015—which pertained only to liability, with damages yet to be determined—did not constitute a final judgment "and therefore should more appropriately be understood as an entry of default." *Swarna*, 622 F.3d at 140; *see also Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 336 (2d Cir. 1986) (concluding that a default judgment was "in fact … [an] entry of default" because the default judgment "expressly ordered that there be an inquest as to damages and indicated that only thereafter would a final judgment be entered"). For that reason, Oluwole's motion was properly evaluated under the standard to set aside a default rather than a final default judgment. And "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default *judgment* because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Enron Oil*, 10 F.3d at 96 (emphasis added) (citation omitted). Accordingly, there is a smaller "range of permissible decisions" available to a district court when a final default judgment has not yet been entered. *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022) (quoting *Warren v. Pataki*, 823 F.3d 125, 137 (2d Cir. 2016)).

Pursuant to Federal Rule of Civil Procedure 55(c), a district court may set aside the entry of a default "for good cause," and it may set aside a final default judgment under Rule 60(b). In deciding whether to relieve a party from a default or a default judgment, a district court considers three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil*, 10 F.3d at 96. Willfulness "is the most significant factor" but is not dispositive. *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 n.4 (2d Cir. 2024); *see also W.B. David & Co. v. De Beers Centenary AG*, 507 F. App'x 67, 69-70 (2d Cir. 2013) ("A finding of willfulness is typically enough to let an entry of default stand. This does not mean, however, that once a district court determines that a defaulting party acted willfully it *must* let the entry of default stand.").

In this case, the district court erred in failing to set aside the default judgment because the second and third *Enron* factors—prejudice and a meritorious defense—strongly favored lifting the default judgment even if the first factor—willfulness—weighed in the other direction.

First, we assume without deciding that the district court did not err in finding that Oluwole's default was willful in light of the fact that Henry introduced sworn evidence on this point and Oluwole did not. Henry's sworn statement—and the screenshot of a Facebook message from Oluwole that she introduced—indicates that Oluwole was aware of the lawsuit in November 2015. In the Facebook message, Oluwole writes that he "was in a very serious accident" and "underwent multiple surgeries." Second Mem. in Opp'n to Def. Oluwole's Mot. to Set Aside Default J., Ex. 4, *Henry v. Oluwole,* No. 13-CV-826 (D. Conn. Oct. 31, 2018), ECF No. 275-4. He states that he "couldn't face [Henry] in court because [he] was felt to have

10

amnesia." *Id.* Thus, the message suggests both that Oluwole knew of the lawsuit and that he defaulted due to complications from his injuries. Willfulness in this context "looks to egregious or deliberate conduct," *United States v. Starling*, 76 F.4th 92, 102 (2d Cir. 2023) (internal quotation marks omitted), that "was not satisfactorily explained," *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998); *see also Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) ("[W]here [a] defendant … does not contend that his non-compliance was due to circumstances beyond his control, an inference of willful default is justified.") (internal quotation marks omitted).

Second, the district court erred in concluding that setting aside the default judgment would have prejudiced Henry. In reaching that conclusion, the district court observed that Henry had already "incurred litigation expenses for over six years, total[ing] 12,000 hours," and "the parties [Henry and Bristol] have already completed voluminous amounts of discovery and filed dispositive motions." S. App'x 5. In other words, the district court decided that Henry had litigated long enough and that setting aside the default judgment would delay the proceedings even further. But "delay alone is not a sufficient basis for establishing prejudice. Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis*, 713 F.2d at 916 (internal quotation marks and citations omitted); *see also Enron Oil*, 10 F.3d at 98; *Swarna*, 622 F.3d at 143. The district court did not find—and the record did not suggest—

11

that setting aside the default judgment would result in the loss of evidence, difficulties in discovery, or fraud and collusion.[3]

Nor did Henry establish any particularized prejudice that would have resulted from permitting Oluwole to litigate his liability. Although Henry's case against Bristol had advanced, no trial date had yet been set when Oluwole filed his motion to set aside the default judgment. In fact, the case would not proceed to trial until October 2019, more than a year after Oluwole's September 2018 motion to lift the default judgment and five months after the district court denied that motion. The district court could have imposed time limits on any discovery or briefing by Oluwole to ensure that the trial would proceed against all defendants in October 2019. Meanwhile, Oluwole himself was deposed by Bristol before its trial. Although Henry's counsel initially failed to appear for this deposition—due to some dispute about scheduling notice—the district court granted her

---

[3] According to the dissent, the record did indicate a loss of evidence because Henry argued that "many witnesses had moved away or died" during the period of Oluwole's default. *Post* at 12 (internal quotation marks and alteration omitted). However, Bristol litigated in the ordinary course during Oluwole's default, so Henry had the opportunity to develop this evidence during the discovery proceedings. Moreover, Oluwole moved to set aside the default judgment over a year before the Bristol trial, so any evidence available at the time of the trial of the non-defaulting defendant would have been available in litigating against Oluwole as well. Of the four witnesses Henry claimed were missing, one—Dr. Leonard Banco—in fact testified at Henry's trial against Bristol, and two others were listed as witnesses whom she intended to call at trial against Bristol. Although those two witnesses appear not to have testified, their inclusion on Henry's witness list suggests that they were available to do so. Henry does not appear to have taken the depositions of the two witnesses whom she claimed were deceased, even though Henry initiated her case against Bristol before either one died.

attorney leave to reopen Oluwole's deposition. The extra time and expense of such a deposition would not have prejudiced Henry, who not only encountered those costs in litigating against Bristol but also would have incurred the same costs had Oluwole timely answered her complaint.

Third, the district court correctly found that Oluwole asserted a potentially meritorious defense, specifically his contention that the "sexual encounter" with Oluwole had been consensual. S. App'x 6. Bristol would ultimately prevail on this very defense—presenting it through Oluwole himself—when it secured a favorable jury verdict in its trial with Henry.

In short, because two of the three *Enron* factors weighed strongly in Oluwole's favor—even assuming that the remaining factor weighed to some extent against it—we conclude that the district court erred in declining to lift the default judgment. There was at least "doubt … as to whether [the] default should be granted or vacated," and that doubt should have been "resolved in favor of the defaulting party." *Enron Oil*, 10 F.3d at 96.

## II

The district court erred again when, after the jury verdict, it vacated the default judgment with respect to the assault and battery claims against Oluwole but not the false imprisonment, IIED, NIED, and negligence claims. The *Frow* principle, which prohibits a default judgment that is inconsistent with a judgment on the merits, required vacatur of the entire default judgment because all of Henry's claims against Oluwole are inconsistent with the jury verdict in favor of Bristol. Each of Henry's claims against Oluwole is premised on Oluwole having sexually assaulted Henry, but the jury found that no sexual assault, assault, or battery occurred.

13

In this case, the defaulting party, Oluwole, even testified at the trial of the non-defaulting co-defendant, Bristol, the liability of which was entirely derivative of Oluwole's own. Henry had the same opportunity to examine and to challenge Oluwole's version of the sexual encounter at the trial against Bristol that she would have had at a trial against Oluwole. She had the same opportunity to present her own version of events. In the end, the jury returned a verdict for Bristol because Henry had failed to prove that Oluwole sexually assaulted, assaulted, or battered her. If we disregard the allegations in Henry's complaint asserting sexual assault, assault, or battery, then the complaint fails to state any plausible claim against Oluwole.

## A

In *Frow*, the Supreme Court held that a default judgment that creates an "incongruity" with a judgment on the merits is "unseemly and absurd, as well as unauthorized by law." 82 U.S. at 554. In that case, fourteen defendants were sued jointly. One defendant defaulted but the claims against the other defendants were dismissed on the merits. The Court reversed the default, explaining that a defaulting defendant has "lost his standing in court," so he is not entitled to additional notices, to introduce evidence, or to be heard at a hearing. *Id.* Even so, "if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike— the defaulter as well as the others." *Id.* This longstanding principle has been reaffirmed frequently and recently by the circuit courts. *See Escalante v. Lidge*, 34 F.4th 486, 495 (5th Cir. 2022) ("*Frow* prohibits directly inconsistent judgments.") (internal quotation marks omitted); *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 950-51 (7th Cir. 2020) (explaining that *Frow* applies when "different results as to the different parties" are "logically inconsistent or contradictory") (quoting *In re Uranium Antitrust Litig.*, 617 F.2d

14

1248, 1257-58 (7th Cir. 1980)); *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (explaining that *Frow* provides that "if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants").[4]

We have also recognized "the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*,

---

[4] Our most recent case citing *Frow* suggested that Rule 54(b) of the Federal Rules of Civil Procedure may have limited the scope of the principle. In *Int'l Controls Corp. v. Vesco*, the plaintiff argued that "notwithstanding the terms of Rule 54(b)," *Frow* "still forbids the entry of a final judgment against one defendant while the others continue to contest liability in the district court." 535 F.2d 742, 746 n.4 (2d Cir. 1976). Our court stated that "[w]e think it is most unlikely that *Frow* retains any force subsequent to the adoption of Rule 54(b)." *Id.* We did not conclusively resolve the issue because "at most, *Frow* controls in situations where the liability of one defendant necessarily depends upon the liability of the others," and that was not the situation then before us. *Id.* In any event, Rule 54(b) authorizes a court to "direct entry of a final judgment as to one or more … claims or parties" so long as "there is no just reason for delay." Fed. R. Civ. P. 54(b). When one defendant defaults, Rule 54(b) may allow the entry of a default judgment against that party even if a co-defendant answers the complaint and proceeds to litigate. If so, Rule 54(b) would qualify the statement in *Frow* that "a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal." *Frow*, 82 U.S. at 554. But Rule 54(b) does not implicate the principle from *Frow* that we apply here: "[I]f the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others." *Id.* It does not matter that Rule 54(b) may allow a final judgment to be entered against the defaulter because the rules also permit the district court to set aside a final judgment for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6), and one such reason is that an incongruous judgment is "unseemly and absurd," *Frow*, 82 U.S. at 554.

373 F.3d 241, 246 (2d Cir. 2004); *see also* 10A Wright, Miller & Kane, Federal Practice & Procedure § 2688.1 (4th ed.) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). The axiom means that a defaulting party "does not admit conclusions of law." Wright, Miller & Kane, *supra*, § 2688.1; *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). In this respect, the standard for whether to award a default judgment resembles that applicable to a motion to dismiss.[5] To enter a default judgment, a district court must determine whether—after taking all well-pleaded allegations as true and making reasonable inferences in the plaintiff's favor—the plaintiff's "allegations establish … liability as a matter of law." *Finkel*, 577 F.3d at 84; *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 n.23 (2d Cir. 2011) (explaining that "a district court may not enter a default judgment unless the plaintiff's complaint states a valid facial claim for relief" and citing cases). To that end, a district court considering whether to grant a default judgment "need not agree that the alleged facts constitute a valid cause of action" and it may even "require proof of necessary facts" to establish liability. *Au Bon Pain*, 653 F.2d at 65; *see also* Wright, Miller & Kane, *supra*, § 2688.1 (noting that "the court, in

---

[5] *See Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment equivalent relief to but not greater than that it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of Romanowicz's default, a court is required to accept all of the Joint Board's factual allegations as true and draw all reasonable inferences in its favor, but it is also required to determine whether the Joint Board's allegations establish Romanowicz's liability as a matter of law.") (citation omitted).

its discretion, may require some proof of the facts that must be established in order to determine liability"). Only after the district court is convinced that the facts meet the elements of the relevant cause of action—whether those facts are established by well-pleaded allegations or proven by admissible evidence—may the district court enter a default judgment.

Thus, this appeal implicates two basic principles. First, to determine whether Henry's complaint justified the entry of a default judgment, we must consider whether her allegations "constitute a valid cause of action." *Au Bon Pain*, 653 F.2d at 65. Second, to comply with the *Frow* principle prohibiting inconsistent judgments, we must disregard the allegations in Henry's complaint that conflict with the jury verdict. Because the jury determined that Henry had not proved that Oluwole committed a sexual assault, an assault, or a battery, we do not credit her allegations that he did. The question is whether the remaining well-pleaded allegations—taken as true, with reasonable inferences in Henry's favor—suffice to "establish … liability as a matter of law." *Finkel*, 577 F.3d at 84. Only if the remaining factual allegations independently establish liability may the default judgment be sustained.

The district court applied this method when it vacated the default judgment with respect to the six battery and one assault claims. The district court explained that because the "jury specifically found that Henry had not proven by a preponderance of the evidence that Dr. Oluwole committed sexual assault, assault, or battery against her," the "entry of default judgment with regard to liability on the counts alleging sexual assault, battery, and assault is logically inconsistent with the jury's verdict." *Henry*, 2020 WL 7773418, at *4.

17

The district court should have vacated the entire default judgment against Oluwole, however, because the jury verdict is also incongruent with the four remaining claims of false imprisonment, IIED, NIED, and negligence. The operative complaint bases those claims on allegations of a sexual assault. If one disregards the allegations in Henry's complaint of a sexual assault, an assault, or a battery, then the complaint fails to state a claim as to any of the claims.

**B**

This analysis requires us to consider the factual allegations in the complaint. We begin by detailing the facts pleaded in the "Facts" section of the complaint and in the sections asserting claims for false imprisonment, IIED, NIED, and negligence. We then determine whether, after disregarding the allegations that are inconsistent with the jury verdict, the remaining facts are legally sufficient to state a claim.

**1**

The "Facts" section of the complaint alleges that around April 2011 Henry contracted with Oluwole to receive post-operative treatment for a lap band procedure that Henry had undergone in 2009 with a different surgeon. On June 11, 2011, Henry contacted Oluwole and informed him that she was having difficulty keeping food and fluids in her stomach. Oluwole told Henry to meet him at Bristol's operating room. When Henry arrived at the operating room, Oluwole said that he needed to retrieve a needle for the procedure from his office and told her to accompany him to his office, which was located on the hospital grounds.

Henry and Oluwole approached the door to his office building. Henry alleges that, as they walked through the front door of the building, Oluwole "grabbed her arm, pulled her towards his body,

18

and attempted to kiss her." App'x 14 (¶ 68). If this touching were nonconsensual, the allegation would establish a battery under Connecticut law. *See Alteiri v. Colasso*, 168 Conn. 329, 334 n.3 (1975) (noting that "harmful contact" is an element of battery) (quoting Restatement (Second) of Torts § 13 (1965)). But in the Bristol trial, the jury specifically found that Oluwole did not batter Henry. As a result, the district court was required to disregard this allegation.

The Facts section further alleges that Henry was weak and in pain but was "able to pull away from Defendant Oluwole's unwelcome sexual assault." App'x 14 (¶ 69). Again, because the jury specifically found that Henry had not proved Oluwole's commission of a sexual assault, the district court was required to disregard this allegation.

The Facts section alleges that after pulling away, Henry believed that Oluwole would not assault her again. So she entered Oluwole's office, at which point he "ordered her to lay on an examining table on her back, and she also noted that there was no other personnel in the building." *Id.* (¶ 71). To access the lap band port around her stomach, Oluwole ordered Henry to "unzip her pants." *Id.* (¶ 72). These allegations do not allege assault, battery, or sexual assault so need not be disregarded.

But, Henry alleges, "[i]mmediately" after she followed Oluwole's instructions, Oluwole "brutally and violently grabbed her by the hair and yanked her mouth [o]nto his exposed and erect penis." *Id.* at 14-15 (¶ 73). After Henry attempted to "move her head away," Oluwole "yanked her head back on his penis a second time, and began violently moving her head back and forth upon his exposed penis." *Id.* at 15 (¶ 74). Henry alleges that Oluwole then "inserted fingers from his free hand into [her] vagina, and then into her anus."

19

*Id.* (¶ 75). At the same time, Henry alleges, Oluwole was "grasping her hair and pulling her head back and forth onto his erect penis." *Id.* (¶ 76). These are allegations of battery and sexual assault that are inconsistent with the jury's findings.[6]

Henry further alleges that she resisted the entire time and that Oluwole did not "'complete' his … sexual assault." App'x 15 (¶¶ 77-78). The complaint alleges that after the assault ended, Oluwole retrieved the medical equipment he needed and performed the requested procedure on Henry's stomach. Henry alleges that when Oluwole finished the procedure, he ordered her to dress and then he left the office.

After excising the statements in the Facts section that are conclusory or that allege a sexual assault, assault, or battery, the complaint contains the following allegations: Henry approached and entered the office building with Oluwole; she felt weak and in pain; she proceeded to his office, where no one else was present; she complied with his orders to lie down and unzip her pants; and he retrieved needed instruments, performed the requested procedure, ordered her to dress, and left the office. These facts are insufficient to

---

[6] This allegation—that Oluwole pulled Henry's hair, restraining her from leaving his office—must be disregarded even under the district court's order. The district court set aside all the claims of battery as inconsistent with the jury verdict. One of those claims—Count Five—is based solely on the allegation that Oluwole "physically grabb[ed] her by her hair while she laid on an examining table at his office." App'x 32 (¶ 160). Count Five alleges no other intentional conduct by Oluwole. But if the jury found that Henry failed to prove that Oluwole battered her, then it necessarily found that he never restrained her by pulling her hair or engaged in contact that was not consensual. The allegation therefore conflicts with the jury verdict, as the district court recognized when it vacated the default judgment as to Count Five.

state a plausible claim for Henry's remaining causes of action. *See infra* Part II.C.

**2**

Henry's false imprisonment claim begins by noting that on June 11, 2011, Oluwole "intentionally confined [Henry] in his office under circumstances where he violently grabbed and held her head upon his exposed erect penis, and where she was not free to leave." App'x 40 (¶ 200). The allegation that Oluwole violently grabbed and held Henry's head is an allegation of a battery and sexual assault that must be disregarded under the *Frow* principle. In the absence of these assertions, the allegations that Oluwole "intentionally confined" Henry and that she was "not free to leave" are conclusory and therefore insufficient to plead a plausible claim of false imprisonment.

The count then alleges that when he "committed the aforementioned actions" Oluwole "confined [Henry] without consent or privilege." *Id.* at 40-41 (¶ 201). That is a "[t]hreadbare recital[] of the elements of a cause of action," unsupported by facts distinct from the allegations of battery and sexual assault that must be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Berry v. Loiseau*, 223 Conn. 786, 820 (1992) (noting that the elements of a false imprisonment claim include that the plaintiff "did not consent to the restraint") (quoting *Lo Sacco v. Young*, 564 A.2d 610, 617 (Conn. App. 1989)). The complaint then alleges that Oluwole acted in his capacity as an "agent" or "official" of Bristol. App'x 41 (¶ 201).

The claim includes several additional allegations that recite the elements of the cause of action in a conclusory fashion: that "Oluwole's act was intentional or he knew with substantial certainty that his unlawful conduct would cause harm to [Henry's] person"; that the confinement was "without probable cause or privilege"; that

21

the confinement was "for purposes of assaulting, battering, and sexually harassing [Henry]"; that Oluwole's office "constituted a bounded and closed area"; and that Henry "did not have a reasonable means of escape based on [Oluwole's] conduct." *Id*. (¶¶ 202-06).[7] The remaining allegations in the count concern Oluwole's relationship to Bristol or Henry's damages. *See* App'x 41-43 (¶¶ 207-17).

**3**

The IIED claim includes only one relevant allegation:

> On or around June 11, 2011, and on other dates and times following[,] Defendant Oluwole intended and did intentionally or recklessly cause the Plaintiff to suffer emotional distress when Defendant Oluwole violently grabbed and held her head upon his exposed erect penis, under circumstances where she was not free to leave his office.

*Id*. at 43 (¶ 218). The allegation that Oluwole grabbed and held Henry's head is an allegation of sexual assault and battery, *see Alteiri*, 168 Conn. at 334 n.3, that is inconsistent with the jury verdict. The remaining allegations are only that Oluwole intentionally and

---

[7] *See Berry*, 223 Conn. at 820 ("To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly.") (quoting *Lo Sacco*, 564 A.2d at 617); *Blango v. Ludovico*, No. 23-CV-212, 2024 WL 988163, at *2 (D. Conn. Mar. 7, 2024) ("[A] person is not liable for false imprisonment unless his act is done for the purpose of imposing confinement, or with the knowledge that such confinement will, to a substantial certainty, result from it.") (quoting *Rivera v. Double A Transp., Inc.*, 248 Conn. 21, 31 (1999)); *Zainc v. City of Waterbury*, 603 F. Supp. 2d 368, 386 (D. Conn. 2009) (explaining that the restraint "must be accomplished through the exercise of force") (internal quotation marks omitted).

recklessly caused Henry to suffer emotional distress under circumstances in which she was not free to leave the office. The other allegations in this count concern Oluwole's relationship to Bristol or Henry's damages. *See* App'x 43-45 (¶¶ 219-35).

**4**

The allegations underlying the NIED claim also focus on Oluwole's relationship to Bristol rather than his interaction with Henry. *See id.* at 46-52 (¶¶ 242-80).[8] For example, the claim relies on allegations that Bristol was aware that Oluwole had committed sexual assaults against other women. *See, e.g.*, App'x 50 (¶ 270).

To the extent that the allegations in this claim plead NIED against Oluwole, the allegations concern the purported sexual assault. For example, the complaint alleges that Oluwole engaged in an "assault, battery, and confinement," that he accomplished "deviant and unlawful acts," that he engaged in "unlawful conduct" and "violent and tort[i]ous conduct," and that there was a "sexual assault and battery the plaintiff was forced to endure." *Id.* at 46-48 (¶¶ 243, 245, 247, 250, 252). These allegations are either conclusory or concern a sexual assault, assault, or battery.

The claim also includes allegations regarding damages. *See, e.g., id.* at 50 (¶ 251) ("[A]s a result of [Oluwole's] violent and tort[i]ous conduct, [Henry] has been permanently injured because of various physical, mental and emotional ailments she has suffered and

---

[8] The record on appeal omits pages 51-52 of the complaint, which contain ¶¶ 255-63. *See* App'x 48-49. The district court docket likewise does not include these pages of the complaint. These missing pages cover the end of Count Twelve—the NIED count—and the start of Count Thirteen. Henry has not appeared in this appeal and for that reason has waived any argument relating to the material in the omitted pages.

23

developed."); *id*. (¶ 254) ("As a direct and proximate result of said battery, [Henry] suffered a massive stroke rendering her paralyzed on her left side.").

**5**

The allegations under the simple negligence claim focus primarily on Oluwole's relationship to Bristol. *See id.* at 56-60 (¶¶ 302-18). For example, Henry alleges that Bristol's managers and agents "knew of Defendant Oluwole's dangerous propensities, especially as here where he had sexually assaulted or sexually harassed four different female employees in four separate inciden[ts] in January 2010, two months after his employment began." *Id.* at 59 (¶ 314).

To the extent that the negligence claim identifies conduct by Oluwole that amounts to negligence, it relies on allegations of his sexual assault against Henry. The complaint alleges in the negligence claim that Oluwole engaged in "unlawful conduct" such as "violat[ing] the Plaintiff"; that Oluwole committed a "sexual assault against the Plaintiff"; that he committed an "assault, battery, and confinement"; that he committed a "deviant and unlawful act[]"; and that he "assaulted, battered, or falsely imprisoned" Henry. *Id.* at 57-58, 60 (¶¶ 303-04, 307, 310, 318). Again, these allegations are either conclusory or concern alleged sexual assault, assault, or battery and must be disregarded.

The claim also relies on allegations relating to damages. *See, e.g., id.* at 60 (¶ 319) ("As a direct and proximate result of the aforementioned negligence, the Plaintiff has sustained catastrophic physical injuries, pain and suffering, serious psychological injury, emotional distress, mental anguish, embarrassment and humiliation."); *id.* at 61 (¶ 322) ("As a direct and proximate result of

24

said battery, Plaintiff suffered a massive stroke rendering her paralyzed on her left side.").

## C

The ultimate question is whether the well-pleaded allegations of the complaint—except those that conflict with the jury verdict—are sufficient to state a claim under Connecticut law for false imprisonment, IIED, NIED, or negligence. We conclude that the complaint fails to state these claims. For each claim, one or more essential elements is unmet. As a result, the default judgment against Oluwole must be set aside.

## 1

Under Connecticut law, "[t]o prevail on a claim of false imprisonment, the plaintiff must prove [1] that his physical liberty has been restrained by the defendant and [2] that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly." *Berry*, 223 Conn. at 820 (quoting *Lo Sacco*, 564 A.2d at 617). The restraint "must be accomplished through the exercise of force." *Zainc*, 603 F. Supp. 2d at 386 (internal quotation marks omitted). "A person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." *Rivera*, 248 Conn. at 31 (quoting *Green v. Donroe*, 186 Conn. 265, 268 (1982)). The complaint fails to state a claim for false imprisonment because—with allegations of sexual assault, assault, or battery disregarded—it does not plead facts plausibly suggesting that (1) Henry's physical liberty was restrained, (2) Henry did not consent to the confinement, (3) Oluwole imposed the restraint by force, and (4) Oluwole imposed the restraint for the purpose of confining Henry or with substantial certainty that confinement would result.

The complaint does not plead facts showing that Henry's liberty was restrained. Because the jury determined that Henry did not prove that Oluwole committed a battery, we must disregard the allegations that Oluwole engaged in harmful contact without Henry's consent. That leaves allegations that Henry entered Oluwole's office and that Oluwole ordered her to lay on the table and unzip her pants so that he could access the lap band port and perform the procedure. Apart from the allegations amounting to battery, the complaint does not suggest that Henry was confined.

Similarly, the complaint does not establish Henry's lack of consent to any confinement. It indicates that Henry entered Oluwole's office building and office voluntarily and complied with the instructions for the procedure. The complaint alleges only that Henry did not consent to the harmful contact—which the jury found Henry had not proven.

The complaint also does not include an allegation of force, such as a threat or obstruction of an exit, other than those allegations that amount to a battery. The complaint alleges that Oluwole grabbed Henry's hair such that she could not leave the office. But the jury found that Oluwole did not "engage[] in tortious conduct towards [Henry] by … battering her," App'x 304, and grabbing and pulling Henry's hair would be a battery because it is "harmful contact," *Alteiri*, 168 Conn. at 334 n.3. Indeed, Count Five of the complaint alleges a battery based solely on Oluwole's "physically grabbing her by her hair while she laid on an examining table at his office." App'x 32 (¶ 160). Because the jury found that Oluwole did not commit a battery, it necessarily determined that Oluwole did not grab Henry's hair without her consent. Accordingly, we cannot credit the allegation that Oluwole did so. There are no other factual allegations that

26

Oluwole restrained Henry "through the exercise of force." *Berry*, 223 Conn. at 821.

For the same reason, the complaint fails to allege that Oluwole acted with the purpose of confining Henry or with substantial certainty that confinement would result. *Rivera*, 248 Conn. at 31. There is no act that Oluwole is alleged to have performed—again, other than those amounting to a battery—that indicates he acted with the intent to confine Henry.

Apart from those allegations that the *Frow* principle requires us to disregard, the complaint fails to provide sufficient factual material to establish the necessary elements of false imprisonment under Connecticut law. Because the complaint is legally insufficient as to that count, the default judgment must be vacated.

**2**

The IIED claim also fails because the complaint does not plead facts distinct from sexual assault, assault, or battery satisfying the elements of the claim. To state a claim for IIED under Connecticut law, the plaintiff must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000) (quoting *Petyan v. Ellis*, 200 Conn. 243, 253 (1986)).

The allegations of the complaint fail to meet the second element of extreme and outrageous conduct. That element is satisfied when conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

27

atrocious, and utterly intolerable in a civilized community." *Id.* at 211 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). An "allegation of being physically assaulted by [an] employer renders [an] IIED claim legally sufficient," *Douglas v. Mystic Motor Inn, Inc.*, No. KNL-CV-13-6018304, 2013 WL 7084791, at *4 (Conn. Super. Ct. Dec. 31, 2013), as does an allegation of sexual assault, *see DiTeresi v. Stamford Health Sys., Inc.*, No. FST-CV-06-5001340, 2010 WL 5493514, at *26 (Conn. Super. Ct. Dec. 14, 2010) ("There is no issue that a sexual assault is extreme and outrageous."). But here we cannot credit the allegations of sexual assault, assault, or battery because those allegations contradict the jury verdict.

The alleged outrageous conduct on which the IIED claim depends is conduct that amounts to a sexual assault or battery. *See* App'x 43 (¶ 218) ("Defendant Oluwole intended and did intentionally or recklessly cause the Plaintiff to suffer emotional distress when Defendant Oluwole violently grabbed and held her head upon his exposed erect penis, under circumstances where she was not free to leave his office."). The complaint contains no separate allegations of outrageous conduct.

**3**

To prevail on a claim for NIED under Connecticut law, "the plaintiff is required to prove that (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Hall v. Bergman*, 296 Conn. 169, 182 n.8 (2010) (internal quotation marks omitted).

28

The NIED claim fails because the complaint alleges only intentional conduct. It does not describe a negligent act by Oluwole that would cause foreseeable distress. The allegations underlying the NIED claim focus largely on Bristol's relationship with Oluwole rather than Oluwole's conduct toward Henry. The allegations about Oluwole's conduct describe intentional sexual assault, referring for example to Oluwole's "deviant and unlawful acts" and the "sexual assault and battery the plaintiff was forced to endure." App'x 46, 48 (¶¶ 245, 252). Such allegations contradict the jury verdict.

Moreover, the allegations underlying the NIED claim fail to establish causation. The complaint traces Henry's NIED injuries to the alleged sexual assault.[9] After putting aside the allegations of sexual assault, assault, or battery, there are no remaining allegations that establish conduct by Oluwole that caused Henry emotional distress so severe as to cause bodily harm. *Hall*, 296 Conn. at 182 n.8.

**4**

In Connecticut, "[t]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *McDermott v. State*, 316 Conn. 601, 609 (2015) (quoting *LePage v. Horne*, 262 Conn. 116, 123 (2002)). The duty element is a "legal conclusion," *id.* (quoting *Mazurek v. Great Am. Ins. Co.*, 284 Conn. 16, 29 (2007)), that turns on "whether the defendant knew, or

---

[9] *See* App'x 48 (¶ 253) ("As a result of Defendant Oluwole's violent and reprehensible conduct, the Plaintiff has been unable to pursue her usual life activities and employment."); *id.* (¶ 254) ("As a direct and proximate result of said battery, Plaintiff suffered a massive stroke rendering her paralyzed on her left side."); *id.* at 51 (¶ 277). ("As a direct and proximate result of the aforementioned sexual assault and battery the plaintiff was forced to endure, the Plaintiff has incurred medical expenses and other economic damages.").

29

should have known, that the situation at hand would obviously and naturally, even though not necessarily, expose [the defendant] to probable injury unless preventative measures were taken," *id.* (quoting *LePage*, 262 Conn. at 124).

The negligence claim fails for the same reasons that the NIED claim fails. The complaint alleges only intentional conduct rather than facts indicating that Oluwole negligently breached a duty that he owed to Henry. The claim relies on allegations of intentional sexual assault. *See, e.g.*, App'x 58 (¶ 307) (alleging that Oluwole committed an "assault, battery, and confinement").

Similarly, the complaint fails to plead causation. The allegations underlying the negligence claim trace Henry's injuries to the sexual assault. [10] Setting aside those allegations that are inconsistent with the jury verdict leaves no remaining allegations that support a causal connection between Oluwole's conduct and Henry's injuries.

## CONCLUSION

The jury at the Bristol trial concluded that Henry failed to prove that Oluwole sexually assaulted, assaulted, or battered her. To comply with the *Frow* principle, the district court could not credit allegations in the complaint that contradicted the jury verdict when

---

[10] *See* App'x 61 (¶ 320) ("As a direct and proximate result of the aforementioned sexual assault and battery the plaintiff was forced to endure, the Plaintiff has incurred medical expenses and other economic damages."); *id.* (¶ 322) ("As a direct and proximate result of said battery, Plaintiff suffered a massive stroke rendering her paralyzed on her left side."); *id*. (¶ 323) ("As a direct and proximate result of said battery, the Plaintiff must incur substantial costs and attorney's fees to seek appropriate redress.").

considering Oluwole's motion to set aside the default judgment. Once such allegations are disregarded, the complaint fails as a matter of law to state a claim for false imprisonment, IIED, NIED, or negligence under Connecticut law. We therefore conclude that the district court erred in denying Oluwole's motion to set aside the default judgment entered against him. We reverse the judgment of the district court entered against Oluwole on September 29, 2021, and remand with instructions to enter judgment in favor of Oluwole.

Henry v. Oluwole,
No. 21-2468

KEARSE, *Circuit Judge*, dissenting:

I respectfully dissent from the majority's ruling that the district court in this case abused its discretion in declining to vacate so much of the entry of default and the nonfinal default judgment as held defendant Oluwole liable on plaintiff Henry's claims of false imprisonment and intentional infliction of emotional distress. Given the record showing (a) that Oluwole was in default for some five years before appearing in the action, (b) that his motion to vacate the default initially proffered the excuse that he had been disabled and hospitalized, but without support by any evidence--not even a sworn statement by Oluwole, (c) that Oluwole's next proffered excuse--that he had not learned of this 2013 action until 2017--was stated in affidavits from Oluwole and his wife that were short-lived, being quickly withdrawn when Henry produced a message that she had received from Oluwole in 2015 referring to his not "fac[ing]" her "in court," and (d) that during the five years prior to any attempt by Oluwole to appear in the action, at least two of Henry's potential witnesses had died, I disagree with both the majority's disregard for the record as to the willfulness of Oluwole's default and its view that the district court could not properly find that Henry had been prejudiced by Oluwole's delay. I also disagree with the majority's

ruling that the complaint failed to state a cause of action for false imprisonment and intentional infliction of emotional distress.

As a procedural matter, a motion to set aside either an entry of default or a default judgment, pursuant to Fed. R. Civ. P. 55(c) or 60(b) respectively, based on facts outside the record should be supported by affidavit or other solemn declaration. *See, e.g.*, Fed. R. Civ. P. 43; 10A Wright & Miller, *Federal Practice and Procedure* § 2695 (4th ed. 2024); 10 *Moore's Federal Practice* § 55.71[2] (3d ed. 2024); *compare United States v. Cirami*, 535 F.2d 736, 739 (2d Cir. 1976) ("*Cirami I*") (affirming denial of motion to vacate entry of default judgment where the defendants provided "no affidavit[s]" as to the reason for their attorney's dereliction or as to their efforts to ascertain counsel's "activity, if any"), *with United States v. Cirami*, 563 F.2d 26, 28, 31, 33-35 (2d Cir. 1977) ("*Cirami II*") (on appeal from the denial of a new motion (allowable despite the law-of-the-case doctrine in light of the "alleged . . . exceptional circumstances"--if proven) to vacate the default, reversing and remanding for a hearing in light of defendants' submitting, "for the first time, [relevant] affidavits" (internal quotation marks omitted)).

As a substantive matter, with respect to consideration of a motion to vacate a default, the

widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) ("*Enron*") (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991) ("*Action S.A.*")). "The[se] three factors . . . have often been cited, but are not exclusive and are not intended as a precise formula." 10 *Moore's Federal Practice* § 55.70[3]; *see, e.g.*, *Enron*, 10 F.3d at 96 ("[o]ther relevant equitable factors may also be considered"). "Of the[ three most commonly enumerated] factors, willfulness carries the most weight" and "is the most significant factor." *In re Orion Healthcorp, Inc.*, 95 F.4th 98, 104 & n.4 (2d Cir. 2024) ("*Orion*") (citing *Action S.A.*, 951 F.2d at 507).

"Courts often consider . . . whether the party acted promptly to correct the default after learning of the entry of default or default judgment," 10 *Moore's Federal Practice* § 55.70[3], in part because delay may indicate that the default was deliberate, *see, e.g.*, *State of New York v. Green*, 420 F.3d 99, 103, 108-09 (2d Cir. 2005) ("*Green*") (defendants' failure to answer the complaint, and the passage of "[n]early a full year" before any defendant moved to vacate the default judgment, supported the district court's finding that the "[d]efendants willfully defaulted . . . []as a part of an overall plan to delay the proceedings" (internal quotation marks omitted)), and in

3

part because "the longer a party waits before seeking relief, the more likely the opposing party is to suffer prejudice," 10 *Moore's Federal Practice* § 55.82[2]. *Compare Action S.A.*, 951 F.2d at 507-08 (affirming denial of motion to vacate default in light of the defendant's admission that he "deliberately chose not to appear in the action" and the "irreparable prejudice" in requiring the plaintiffs--"eight years after they commenced th[e] action"--"to reconstruct and prove events which occurred almost a decade ago"), *and Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 335-36 (2d Cir. 1986) (affirming denial of motion to vacate default where, prior to moving, the defaulting party had known of the entry of default for "at least seven months"), *with Weisel v. Pischel*, 197 F.R.D. 231, 239 (E.D.N.Y. 2000) (nondefaulting party would not be prejudiced by vacatur of a default judgment where the defaulting part had "*promptly* made" a motion for relief from the default "several weeks after the default was entered," and "no evidence was . . . destroyed, and *no witnesses became unavailable* or lost their memory regarding pertinent events" "*[d]uring that period*" (emphases added)).

4

A. *Willfulness and Prejudice in the Present Case*

In the present case, the district court found against Oluwole on the issues of willfulness and prejudice. As to willfulness--that "most significant factor" that "carries the most weight," *Orion*, 95 F.4th at 104 & n.4--the majority treats the record, the district court's finding of willfulness, and, indeed, the willfulness issue itself, with disdain. It "assume[s] without deciding" that the district court did not err in finding willfulness, Majority Opinion *ante* at 10, stating that Oluwole was entitled to have the default vacated "*even assuming* that the [willfulness] factor *weighed to some extent* against [him]," *id*. at 13 (emphases added). But in fact the record abundantly supports the court's finding, *see* Ruling on Motion To Set Aside Default Judgment dated May 6, 2019 ("May 6, 2019 Ruling"), at 4, (D.Ct. Dkt. 284), that "Oluwole's default was willful."

Henry commenced this action in June 2013. Oluwole made no response in the action itself until September 2018. (D.Ct. Dkt. 257.) In the meantime, Henry had moved for, and been granted, entry of default against Oluwole in early 2015, and she moved for a default judgment that was granted in October 2015 (noting that damages would be determined after resolution of claims against codefendants). (D.Ct. Dkt. 50, 51, 58, 103-104.) A month later, in November 2015, Oluwole sent

5

Henry a Facebook "friend-request" and message stating that he "couldn't face [her] in court." (D.Ct. Dkt. 275-4.) And thereafter Oluwole did nothing to appear in this action for nearly three more years.

In September 2018, Oluwole's attorney filed a "Motion To Set Aside Default Judgment as to . . . Oluwole" ("Motion To Vacate" or "Motion"). The Motion argued that good cause existed for Oluwole's failure to answer the complaint because Oluwole "represent[ed]"

- that he had been "in a traumatic motor cycle accident" in October 2013,

- that he then was in a coma, hospitalized, and undergoing surgical procedures for several weeks,

- that he was thereafter hospitalized at a series of facilities until mid-January 2014,

- that he then moved to, and remained at, his parents' residence in New Jersey for extensive outpatient rehabilitation,

- that an attempted service of the complaint on him on March 1, 2014, at Albany Medical Center, his then-place of employment, was unsuccessful because Oluwole was living in New Jersey, "on extended medical leave of absence,"

- that a further attempted service on him at his last known address in Kingston, New York (or the "Kingston apartment"), on March 24, 2014, was unsuccessful because Oluwole was living in "New Jersey and did not reside in New York,"

6

- that Oluwole had not resided at the Kingston apartment since October 1, 2013,

- that he "never received proper notice of the Complaint," and

- that it was only when he "attempted to have his licenses to practice medicine in New York and Connecticut reinstated [that he] learned that a default judgment had been entered against him in the present matter."

(D.Ct. Dkt. 257, ¶¶ 3-12, 15, 22-23.)

But the Motion To Vacate was signed only by Oluwole's attorney, who did not suggest that he had any personal knowledge as to these excuses for Oluwole's default. Nor was the Motion accompanied by any sworn declaration from Oluwole or his parents or any medical personnel--or by any documentation--(a) as to his health, hospitalizations, or medical needs, (b) as to the assertion that he had been on leave of absence from the Albany Medical Center in March 2014 when service of the complaint was attempted on him there, or (c) as to the representation that he had not resided at his last known Kingston address since October 1, 2013.

In response to Oluwole's denial that he had received notice of this action, Henry presented affidavits that attested to the affiants' appropriate service of the complaint at Oluwole's Kingston apartment followed by mailing, and evidence that it was not returned as undeliverable. Henry also submitted affidavits or other

7

documents to refute Oluwole's unsworn and unsupported representations as to his circumstances and the events in March 2014. Her evidence included

- an Albany Medical Center personnel record showing that Oluwole had not begun his leave of absence until April 2, 2014,

- Oluwole's lease on his Kingston apartment through June 30, 2014,

- an April 2014 leasing company record showing that Oluwole's rent on his Kingston apartment had been paid through March 31, 2014, and

- the absence of any Post Office record of a change of Oluwole's address.

(D.Ct. Dkt. 268-1; 268-2; 275-8, ¶ 20.)

Oluwole did eventually file an affidavit on October 29, 2018; but it contained no factual assertions to support any of his Motion's assertions as to his health, hospitalization, medical problems, or residence in 2013-2014. Instead (other than asserting that any sexual relations between himself and Henry had been consensual), most of the Oluwole's affidavit purported to describe how Oluwole learned of the present action, and it culminated in his assertion that "[t]he first time I was aware of the present lawsuit was in October of 2017." (D.Ct. Dkt. 273-1, ¶¶ 1-10.) Oluwole also filed on October 29, 2018, an affidavit from his wife, stating

8

that, "[t]o [her] knowledge," Oluwole had not been aware of this action until October 2017. (D.Ct. Dkt. 273-2, ¶¶ 5-8.)

Even if those representations had been true, nothing was offered to explain why Oluwole--knowing of his default in 2017--had taken no action to request vacatur of his default until nearly another full year had passed. But the assertions that he had not learned of this action until 2017--both as sworn to by Oluwole and his wife, and as relayed to the court by Oluwole's attorney--were swiftly retracted after Henry, on October 31, filed affidavits attaching a screenshot of the Facebook communication that she had received from Oluwole in November 2015 (D.Ct. Dkt. 275-4), in which he stated that he "'couldn't face [Henry] *in court*,'" May 6, 2019 Ruling at 3 (emphasis mine). Less than a week later, while stating that Oluwole would still maintain that any sexual encounters had been consensual, Oluwole's attorney filed a "[s]upplemental reply" on November 5, 2018, stating that

> *the undersigned, on behalf of defendant . . . Oluwole*, MD, and with the consent of defendant . . . Oluwole, MD, *hereby* **withdraws** *the following submissions of fact previously asserted on behalf of said defendant*:

> 1. *A portion of the affidavit of Olakunle Oluwole, MD dated October 26, 2018, which asserts that he first learned of the present lawsuit in October 2017. . . .*

9

> 2. *All oral and written representations made by the undersigned alleging that . . . Oluwole, MD, first learned of the present lawsuit in October 2017.*
>
> 3. *The entire affidavit of [Oluwole's wife] . . . .*

(D.Ct. Dkt. 276 (emphases added).)

> As the district court described in denying Oluwole's Motion To Vacate,
>
> Dr. Oluwole *argues* that he did not receive proper notice of the complaint. *Henry, however, provides evidence suggesting that Dr. Oluwole had actual notice of the claims pending against him and chose not to answer.* In November 2015, Dr. Oluwole allegedly contacted Henry on Facebook and admitted that he "couldn't face [her] *in court.*"

May 6, 2019 Ruling at 3 (emphases added).

The majority acknowledges that 2015 message from Oluwole, but-- apparently suggesting that he should be distinguished from defaulters who had "'not satisfactorily explained'" their defaults, Majority Opinion *ante* at 11 (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998))--the majority emphasizes Oluwole's attempt to excuse his default. It states that "[i]n the Facebook message, Oluwole writes that he 'was in a very serious accident' and 'underwent multiple surgeries,'" Majority Opinion *ante* at 11; that Oluwole "states that he 'couldn't face [Henry] in court because [he] was felt to have amnesia,'" *id.*; and that "[t]hus," Oluwole's Facebook "message

suggests both that Oluwole knew of the lawsuit and that he defaulted due to complications from his injuries," *id*. The district court was not required to credit such unsubstantiated explanations when Oluwole proffered them in his formal Motion; much less was it required to credit, as the majority seems to do here, these self-serving aspects of his 2015 social media missive.

With respect to the prejudice factor in its *Enron* analysis of Oluwole's Motion To Vacate, the district court's discussion was brief. In its May 6, 2019 Ruling, the court noted that the action had been pending for six years; that "'delay alone is not a sufficient basis for establishing prejudice'"; and that "[t]o establish prejudice, Henry must demonstrate that the delay will result in the loss of evidence, create increased difficulties for discovery, or provide greater opportunity for fraud and collusion." May 6, 2019 Ruling at 4 (quoting *Green*, 420 F.3d at 110 (other internal quotation marks omitted)). The court found, "[a]fter a review of the record, [that] the prejudice prong weighs in Henry's favor." May 6, 2019 Ruling at 4.

While the district court did not specify the parts of the record that led it to that conclusion, we are free to affirm a district court decision on any ground for which there is sufficient support in the record. *See Colautti v. Franklin*, 439 U.S. 379, 397 n.16 (1979). In *Enron*, for example, in which the district court had inappropriately

11

"refus[ed] to set aside the entry of default solely on the basis of [defendant's] untimely response to Enron's default application," 10 F.3d at 97, we considered whether "the record on appeal" revealed "readily apparent" appropriate "reasons why the district judge denied the motion to set aside the default," *id*.

As Oluwole's brief on appeal acknowledges, prejudice from a default may exist where "*the effect of the delay caused by the defendant's default*" included a "loss of evidence" (Oluwole brief on appeal at 13 (internal quotation marks omitted) (emphasis mine)); *see*, *e.g.*, 10A Wright & Miller, *Federal Practice and Procedure* § 2699. In the district court, Henry argued, *inter alia*, that during the lengthy period of Oluwole's default, "[m]any witnesses" had moved away or died, causing "extreme difficulties with respect to [her] proof." (D.Ct. Dkt. 268.) Her memorandum identified six such individuals, including at least two who died during the five-year period prior to any attempt by Oluwole to appear in the action, one in or around 2014, and the other in 2017. I have seen nothing in the record to indicate any suggestion by Oluwole that the individuals identified by Henry had not died or become otherwise unavailable.

In the two-plus years in which the district court considered Oluwole's repeated requests to vacate the default, the court repeatedly noted the willfulness and

12

length of Oluwole's inaction prior to making any effort to request that the default be vacated. *See*, *e.g.*, May 6, 2019 Ruling at 3 ("Oluwole had actual notice of the claims pending against him and chose not to answer"); *id*. at 3-4 (Oluwole "made no effort to appear" until "over five years after the action was filed" (internal quotation marks omitted)); Ruling on Motion To Reconsider, dated May 14, 2019 ("May 14, 2019 Ruling"), at 2 (Oluwole "did not make an appearance until . . . nearly three years after entry of the default judgment") (D.Ct. Dkt. 288); *id*. (noting "Oluwole's five-year delay [in] asserting a potentially valid defense"); Ruling on Motion To Set Aside Default Judgment, dated January 10, 2020 ("Initial Posttrial Ruling"), at 2 & n.2 ("Oluwole had actual notice of the claims pending against him and chose not to answer" (internal quotation marks omitted)) (D.Ct. Dkt. 359). The district court was entitled to consider that the delay caused by Oluwole's prolonged default likely resulted in the loss of some evidence that could otherwise have corroborated Henry's claims. For example, in its final Order, dated September 28, 2021 ("2021 Order") (D.Ct. Dkt. 420), the court noted yet again the "evidence that the default had been willful, and . . . the significant period of time between the entry of default judgment in 2015 and Dr. Oluwole's appearance in 2018," *id*. at 2-3, and noted that proving a claim of "significant

13

emotional distress generally requires evidence of treatment by a healthcare professional or *corroborating witnesses*," *id*. at 20 (emphasis added).

There can be no certainty as to what the individuals who died would have testified if they could have been called as witnesses at trial. But I cannot see that any such uncertainty should be resolved in favor of a defendant who willfully defaulted for years and seeks to have the default vacated after potential witnesses have died--especially a defendant who at first proffered excuses that he chose not to make under oath, and who thereafter submitted a sworn excuse that he was immediately impelled to retract. I cannot join the majority's view that it was impermissible for the district court to conclude that the prejudice factor favored Henry rather than Oluwole.

B. *The Posttrial Partial Grant of Oluwole's Motion To Vacate*

Notwithstanding Oluwole's willful default and the finding of prejudice as to Henry, the district court's ultimate decision to vacate so much of the default as found Oluwole liable for assault, sexual assault, and battery, *see* Ruling and Order dated December 30, 2020 ("Second Posttrial Ruling") (D.Ct. Dkt. 403), was correct. Henry's claims that the hospital with which Oluwole was affiliated at the time of that

14

alleged tortious conduct (the "Hospital") should be held liable for negligently hiring and supervising him were tried to a jury. The jury's verdict was that Henry had failed to "prove[] by a preponderance of the evidence that Dr. Oluwole engaged in tortious conduct toward her" either (Question 1) "by sexually assaulting her" or (Question 2) "by assaulting or battering her." (D.Ct. Dkt. 342.) Because no rational judgment could be based on the probable existence of a fact that the jury has expressly found did not probably exist, the district court properly concluded in its Second Posttrial Ruling that so much of the default judgment as ruled that Oluwole had engaged in conduct that constituted assault, sexual assault, or battery against Henry must be vacated.

However, the district court concluded that no vacatur was warranted with respect to the four claims Henry had asserted against Oluwole other than for assault, sexual assault, or battery--*i.e.*, her claims for intentional infliction of emotional distress (or "IIED"), negligent infliction of emotional distress (or "NIED"), negligence, and false imprisonment (collectively the "non-assaultive" torts)--because "[those] other causes of action . . . do not involve sexual assault," Second Posttrial Ruling at 4. (D.Ct. Dkt. 359.) The status of those four claims was significantly different from that of the claims of sexual assault, assault, and battery (collectively "assault/battery") in several ways. First, although a "defendant seeking to vacate an entry of default must

15

present some evidence" that "if proven at trial, would constitute a complete defense," *Enron*, 10 F.3d at 98, Oluwole's Motion To Vacate did not suggest a meritorious defense against any of the four non-assaultive claims. Oluwole asserted only that his sexual relations with Henry were consensual. While this addressed the assault/battery claims, neither assault or battery--nor any aspect of sexual relations--is an element of intentional or negligent infliction of emotional distress, negligence, or false imprisonment. Thus, Oluwole's Motion To Vacate did not present a complete defense to tort claims that do not involve sexual assault.

Second, nothing that transpired at the trial of Henry's claims against the Hospital contradicted her claims against Oluwole for the non-assaultive claims. Her claim of false imprisonment had--in the complaint itself--been "WITHDRAWN AS TO [THE] HOSPITAL." (D.Ct. Dkt. 128, at 40.) The claims that the Hospital was vicariously liable for Oluwole's torts had been dismissed prior to trial, either for failure to state a claim (D.Ct. Dkt. 181, at 13-18) or on summary judgment (D.Ct. Dkt. 283, at 17-18). And although a "somewhat unclear" claim of negligence, 2021 Order at 8 n.7, had not been dismissed before trial, there was neither evidence at trial nor a verdict as to Oluwole's negligence. As "[e]vidence regarding [the four non-assaultive] claims was never presented to a jury," no questions as to those claims

16

were posed to the jury, and thus, "the jury's verdict is irrelevant to those allegations," Initial Posttrial Ruling at 4; *see* Jury Verdict Sheet (D.Ct. Dkt. 342.)

The majority rules, however, that the default judgment should have been vacated as to the four non-assaultive claims as well as the assault/battery claims, on the ground that the complaint--when stripped of all allegations relating to Henry's claims of assault/battery--failed to state a cause of action. In my view, the district court correctly retained the two intentional-tort claims but should have dismissed the two claims that were premised on negligence.

Whether a complaint is sufficient to state a claim on which relief can be granted is an issue of law. A defendant who has defaulted is deemed to have admitted all of the complaint's well-pleaded factual assertions against him; but he "does not [thereby] admit conclusions of law." 10A Wright & Miller, *Federal Practice and Procedure* § 2688.1; *see, e.g.*, 10 *Moore's Federal Practice* § 55.32[1][a] ("On a motion for default judgment, the well-pleaded facts in the complaint relating to liability are taken as true. . . . However, a defendant does not admit facts that are not well pleaded nor does the defendant admit conclusions of law." (emphases omitted)); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). In the complaint, every harmful act that Oluwole was alleged to have performed was alleged to have been

17

intentional. Because I do not see that the complaint alleged facts to show that Oluwole was negligent, I agree with the majority that the district court should have vacated the default judgment insofar as it held Oluwole liable for negligence and negligent infliction of emotional distress.

As to the two intentional-tort claims--false imprisonment and intentional infliction of emotional distress--I disagree with the majority's view of the complaint, given the normal standards for assessing sufficiency. In determining whether a complaint states a claim on which relief can be granted, the court is required to accept the complaint's "well-pleaded factual"--nonconclusory--allegations as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 681 (2009) ("*Iqbal*"), and must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff," *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (en banc), *cert. denied*, 560 U.S. 978 (2010). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("*Twombly*") (internal quotation marks omitted). Indeed, a plaintiff is allowed, even "in a single count," to "state as many separate claims . . . as [she] has, regardless of consistency." Fed. R. Civ. P. 8(d). And when the plaintiff has "plead[ed] multiple--sometimes contradictory--theories of liability," "it is incumbent on the court

18

to *address each theory on its own merit*, separating out as necessary the allegations underlying the various claims." *Cunningham v. Cornell University*, 86 F.4th 961, 979 (2d Cir. 2023) (emphasis added).

After "assum[ing] the[] veracity" of the "well-pleaded factual allegations," the "court should . . . then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see Twombly*, 550 U.S. at 556. "The plausibility standard"--while demanding allegations of facts that show "more than a sheer possibility" of unlawful action--"is not akin to a probability requirement." *Iqbal*, 556 U.S. at 678-79 (internal quotation marks omitted).

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In order to determine sufficiency, the court should consider "'*all* of the'" complaint's nonconclusory, well-pleaded factual allegations "'taken collectively,'" rather than making its assessment "based on 'any individual allegation, scrutinized in isolation.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (emphasis in *Tellabs*)).

19

The procedural sequence in the present case--in which the sufficiency of the complaint to state certain claims must be assessed after there has been a jury verdict as to other claims--requires a modification of the usual requirement that in assessing the sufficiency of the complaint the court must take "all" of its well-pleaded, nonconclusory allegations of fact as true. But respect for the jury's finding that Henry did not prove that Oluwole more likely than not subjected her to assault/battery does not require us simply to ignore every sentence in the complaint that mentions a physical or threatening touch. For example, with respect to the assertion that when Henry and Oluwole arrived at his office building "he grabbed her arm, pulled her towards his body, and attempted to kiss her" (complaint ¶ 68), it may well be that we should eliminate from consideration the allegations that Oluwole "grabbed her arm" and "pulled." But the allegation that Oluwole "attempted to kiss her" should not be disregarded.

Whether the complaint used the word "'attempt' in its ordinary sense of 'try,'" or instead in the criminal-law sense of "taking 'a substantial step' toward the completion of a crime with the requisite *mens rea*," *United States v. Hansen*, 143 S. Ct. 1932, 1942 (2023), the allegation that Oluwole "attempted to kiss [Henry]" does not conflict with the jury's finding that Oluwole's conduct did not constitute

20

assault/battery.  In the ordinary sense, an "attempt" to kiss may be manifested by suggestively encroaching upon another's personal space without succeeding in making or causing imminent apprehension of physical contact.

And in the context of a prosecution for a crime of attempt, a "substantial step must be something more than mere preparation," but the "focus[ is] on what the defendant had already done," and it may well be "less than the last act necessary before the actual commission of the" intended conduct. *State v. Daniel B.*, 331 Conn. 1, 16-17, 201 A.3d 989, 997-98 (2019) (internal quotation marks omitted).  Here, the complaint alleged that Oluwole had Henry meet him at the Hospital--where common sense would lead one to expect there would be other people around--and then, claiming a lack of the appropriate surgical needle at the Hospital, he required Henry to accompany him to a building where there were no other people and where he immediately made some movement, unsuccessfully, to kiss her.  (Complaint ¶¶ 65-68.) The complaint plausibly alleges that an "attempt[]" to kiss Henry occurred without Oluwole's assaulting or battering her.

The majority here, in ruling that the complaint does not sufficiently state claims for false imprisonment or IIED, fails to take into account all of the well-pleaded allegations that do not conflict with the jury's verdict.  With regard to Henry's claim

21

of false imprisonment, the majority examines the complaint's ¶ 200 and concludes that--with the part alleging that Oluwole violently grabbed and held Henry's head disregarded (because of the jury's findings of no assault/battery)--"the allegations that Oluwole 'intentionally confined' Henry and that she was 'not free to leave' are conclusory and therefore insufficient to plead a plausible claim of false imprisonment." Majority opinion *ante* at 22 (quoting complaint ¶ 200). And it finds that ¶ 201's allegation that "Oluwole 'confined [Henry] without consent or privilege'" is insufficient, viewing it as "a [t]hreadbare recital[] of the elements of a cause of action, unsupported by facts distinct from the allegations of battery and sexual assault that must be disregarded," Majority opinion *ante* at 22 (quoting complaint ¶ 201 (other internal quotation marks omitted)).

It is of course true that false imprisonment is an intentional tort and that the allegation that Oluwole's confinement of Henry was "intentional[]" thus specifies an element of that cause of action; the same is true with respect to the complainant's lack of "consent." But it is difficult to allege another person's intent without doing so conclusorily (hence the provision in Fed. R. Civ. P. 9(b) that "intent, knowledge, and other conditions of a person's mind may be alleged generally," *see, e.g., Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002)), and a plaintiff is not required to plead

evidence, *see generally Swierkiewicz v. Corema N.A.*, 534 U.S. 506, 512-13 (2002). In any event, the complaint here, as a whole, is neither conclusory nor threadbare.

With respect to the claim of false imprisonment, *i.e.*, that Oluwole had Henry confined for some period of time against her will, the complaint's factual allegations include the following:

■ Henry, who had worked at the Hospital for more than two decades in various capacities and in 2011 worked in the Surgical Services Department, had had a "lap band" procedure performed in December 2009, by a surgeon who thereafter left the Hospital. In the Spring of 2011, because of her surgeon's departure and the financial limitations on her medical insurance coverage, for post-operative procedures Henry became Oluwole's patient (complaint ¶¶ 4-5, 11, 61-64);

■ on June 11, 2011 (a Saturday), Henry contacted Oluwole because she was having post-surgical problems with the retention of food and fluids in her stomach (*id*. ¶¶ 60, 65);

■ Oluwole told Henry to meet him in an operating room in the Hospital that afternoon (*id*. ¶ 65);

■ because of the buildup of fluids in her stomach, Henry was in pain and discomfort and in a weakened condition (*id*. ¶¶ 66, 69);

■ when she met him as instructed, he told her that the necessary needle--for removal of the fluids that were causing her pain--was not there (*id*. ¶¶ 66-67);

■ for the procedure, Oluwole required Henry to accompany him to his office, which was on Hospital grounds but in a separate building (*id*. ¶ 67-68);

23

■ when they arrived at the door to Oluwole's building, Oluwole "attempted to kiss her" (*id*. ¶ 68);

■ Henry resisted (*id*. ¶ 69);

■ Henry proceeded to Oluwole's office; she noticed that "there was no other personnel in the building," but she did not believe that Oluwole would make another such "attempt[] . . . again" (*id*. ¶¶ 68-71);

■ to facilitate insertion of the needle to withdraw the fluids that were causing Henry pain and discomfort, Oluwole instructed Henry to lie on the examining table and to unzip her pants (*id*. ¶ 72-73);

■ after Henry followed those instructions--but only after a period of time in which she resisted Oluwole's unsuccessful efforts (at perhaps attempt or persuasion, or whatever he did that did not, the jury found, constitute sexual assault, assault, or battery conduct)--Oluwole went "to fetch the needle" he needed to "withdr[a]w the excess fluids that caused [Henry's] pain and discomfort" (*id*. ¶ 78);

■ thus, on June 11, 2011, "Oluwole intentionally confined [Henry] in his office," "without consent, [probable cause,] or privilege," "under circumstances . . . where she was not free to leave," and when he "knew with substantial certainty that his unlawful conduct would cause [Henry] harm" (*id*. ¶¶ 200-203).

In my view, these allegations of fact as a whole, which we are required to credit in assessing the sufficiency of the complaint to state a claim of false imprisonment, plausibly show circumstances in which Oluwole--as Henry's doctor--required her either to remain in his office for an unnecessarily prolonged period or to leave without receiving treatment for her pain. Given a choice between remaining

24

in hopes of having her pain relieved while Oluwole, for no medical reason, delayed performing the needed procedure, and leaving without relief from her pain and without other prospects for receiving such relief, it is reasonable to infer that Henry realistically viewed herself as forced to remain and not free to leave.

I also disagree with the majority's view that the complaint failed to state a claim for intentional infliction of emotional distress, based on its view that the "only . . . relevant allegation" as to that claim could not be separated from the allegation that Oluwole had "'violently grabbed and held her head upon his exposed erect penis,'" Majority opinion *ante* at 23 (quoting complaint ¶ 218). The complaint alleged that on June 11, 2011, when Oluwole caused Henry to accompany him to his office for the procedure to relieve her postoperative pain, Oluwole had "attempted to kiss her" (complaint ¶ 68), and that for some two months thereafter, Oluwole continually made "unsolicited sexual comments" and other gestures to Henry that caused her to seclude herself in her office in an effort to avoid encountering Oluwole (*id*. at 89). It also alleged that when her job required her to go to Oluwole's "work area," including the operating room, Henry frequently "ask[ed] co-workers to accompany her 'as security'" "out of fear that she would run into" Oluwole. (*Id*. at ¶¶ 7, 90 (other internal quotation marks omitted).)

25

For all of the above reasons, I dissent from the majority's view that the district court abused its discretion in declining to vacate Oluwole's default with respect to the torts of false imprisonment and intentional infliction of emotional distress.

To the extent that the ultimate default judgment awarded Henry damages for all four of the non-assaultive claims against Oluwole that were not addressed in the jury verdicts, I would remand for the district court to determine whether, and if so to what extent, elimination of the two negligence-based claims affects the amount of damages awarded.

In all other respects I would affirm the judgment of the district court. I see no abuse of discretion in the district court's assessment of the record.